UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **FERMIN CORTEZ**, *et al*., | ) | 8:08CV90 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **DAVID CHUOL**, *et al*., | ) | 8:08CV99 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **CONSOLIDATED CLASS AND** |
| vs. | ) | **COLLECTIVE ACTION** |
| | ) | **COMPLAINT** |
| **NEBRASKA BEEF, LTD. and** | ) | |
| **NEBRASKA BEEF, INC.,** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendants. | ) | |

## INTRODUCTION

1. Plaintiffs David Choul, Fermin Cortez, Gregory Garcia, Issac E. Valencia, Jorge Contreras, Javier Moreno Lopez, Santos Perez, Lorenzo Jimenez, and Terry Johnson (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, by and through their undersigned counsel, bring this class and collective action against Nebraska Beef, Ltd. and Nebraska Beef, Inc. (collectively, "Nebraska Beef" or "Defendant") on behalf of all current and former non-exempt, hourly production and support employees who have been employed at any time by Defendant at its Omaha, Nebraska processing facility during the time period March 4, 2005 to the present, and who use personal protective equipment (the "Class").

2. Plaintiffs bring this case to challenge Defendant's policy or practice of requiring its non-exempt, hourly production and support employees to work substantial

1

amounts of time "off-the-clock" and without pay, and failing to provide them with the meal and rest periods to which they are entitled by law.

3. Pursuant to its compensation system, Defendant does not pay Plaintiffs and class members for various tasks that are necessary and integral to their overall employment responsibilities, such as:  a) obtaining tools, equipment and supplies necessary for the performance of their jobs; b) obtaining, preparing, donning, doffing, and sanitizing personal protective equipment and clothing ("PPE"); c) sharpening knives or using knife maintenance equipment known as "steels" or "mousetraps"; and d) walking between work sites before the first work activity and after the last work activity of the day.  Defendant requires that these tasks be performed at the beginning of the shift, during unpaid meal periods and paid rest periods, and at the end of the shift.

4. Plaintiffs and the Class spend as much as an hour of each day performing these required work tasks without any compensation.  Defendant is liable to Plaintiffs and the Class for this unpaid time, under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., and Nebraska state law, as set forth below.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331 because they raise a question of federal law.  This Court has supplemental jurisdiction over Plaintiffs' Nebraska state law claims pursuant to 28 U.S.C. § 1367.

6. Venue is proper in this Court because the events giving rise to Plaintiffs' claims occurred within this judicial district and because Defendant resides in this judicial district and is subject to personal jurisdiction here.

## PARTIES

7.      Plaintiffs David Chuol, Fermin Cortez, Gregory Garcia, Isaac E. Valencia, Jorge Contreras, Javier Moreno Lopez, Santos Perez, Lorenzo Jimenez, and Terry Johnson are current or former employees of Defendant's Omaha, Nebraska meat-processing facility who worked for Defendant since March 3, 2005.

8.      Defendants Nebraska Beef, Ltd. and Nebraska Beef, Inc. (collectively, "Nebraska Beef" or "Defendant") operate a beef-processing facility in Omaha, Nebraska. Both Nebraska Beef, Ltd. and Nebraska Beef, Inc. are engaged in interstate commerce and in the production of goods for commerce throughout the United States.

## FACTUAL ALLEGATIONS

9.      Pursuant to state and federal regulations and Defendant's own internal policies, procedures and practices, Plaintiffs and the Class are required to wear special personal protective equipment ("PPE") and related clothing in the performance of their jobs, for protection and sanitary reasons.  PPE includes, *inter alia*, plastic aprons, steel aprons, cloth aprons, belly guards, arm guards, steel sleeves, sheaths, gloves, mesh gloves, mesh aprons, hardhats, scabbards, hairnets, earplugs, coveralls, eye protection, and other protective equipment and coverings.  Most of Defendant's production and support employees use knives and other sharp instruments in the course of their work, and the PPE is designed to protect the workers from injury.  The PPE and other required gear and clothing are also designed to protect the meat products from contamination by human-generated biohazards.

3

10. At the beginning of each workday, Plaintiffs and the Class report to their lockers and/or to their work stations to don certain PPE. They must also wait in line to obtain other PPE, walk to storage areas and obtain knives and other gear, sharpen their knives using "steels" and/or "mousetraps," walk to sanitation stations and sanitize their gear, and walk to their production lines and don other PPE after they arrive at their stations. Plaintiffs and the Class are not paid for any of these work activities.

11. During their meal and rest periods, Plaintiffs and the Class must remove their PPE before taking their breaks. Before returning to their workstations at the conclusion of their breaks, Plaintiffs and the Class must put back on PPE, return to the line, don the remainder of their PPE and wait to be put back on the clock. Often, Plaintiffs and the Class must sanitize their PPE and other tools and equipment or wait in line to receive sanitized items. All of these activities are work activities, and Defendant does not compensate Plaintiffs and the Class for the time it takes to perform them.

12. At the end of the day, and after being taken "off the clock" by Defendant, Plaintiffs and the Class must finish their work on production and other activities, remove and carefully bag their gloves, perform a procedure to close and bind their "glove bag" for washing, walk to wash stations, wait in line to wash their PPE, wash their PPE, walk to their lockers, doff their PPE, and stow their uniforms, PPE, and gear in their lockers and/or storage areas. Despite that these activities are compensable work and take a substantial amount of time to complete, Defendant does not pay Plaintiffs and the Class for this time.

13. All of the described off-the-clock work herein is required, encouraged, suffered and/or permitted by Defendant.

**CLASS AND COLLECTIVE ACTION ALLEGATIONS**

14. Plaintiffs bring their first and second Causes of Action set forth below pursuant to the FLSA as a collective action under 29 U.S.C. § 216(b) on behalf of the Class. Plaintiffs' claims based on Defendant's violation of the overtime and minimum wage provisions of the FLSA may be brought and maintained as an "opt-in" collective action pursuant to Section 216(b) of the FLSA, because Plaintiffs' claims are similar to the claims of the Class members.

15. Class members are similarly situated, as they have substantially similar job requirements and provisions and are subject to a common practice, policy or plan that requires them to perform work without compensation.

16. Plaintiffs bring their third, fourth, fifth and sixth Causes of Action based on violations of Nebraska state law as a class action pursuant to Fed. R. Civ. P. 23.

17. Class members are similarly situated by virtue of the common questions of law and fact that exist and predominate as to Plaintiffs and the Class, including, without limitation:

    (a) Whether Defendant, through its policy or practice of requiring the Class to perform substantial work off-the-clock, fails to pay the Class members all of the wages they are owed pursuant to the FLSA and Nebraska law;

    (b) Whether Defendant, through its policy or practice of requiring the Class to perform substantial work off-the-clock, fails to provide the Class members with complete meal and rest periods pursuant to the FLSA and Nebraska law;

(c) Whether the donning/doffing/walking/waiting/washing/cleanup/glove swap activities at issue in this case are integral or indispensable to Defendant's business operations;

(d) Whether the donning/doffing/walking/waiting/washing/cleanup/glove swap activities at issue in this case are required, controlled or permitted by Defendant;

(e) Whether Defendant has failed to keep true and accurate time records for all hours worked by its non-exempt, hourly employees as required by the FLSA and Nebraska state law;

(f) Whether the work performed by Plaintiffs and the Class is included in the type of work Defendant employed Plaintiffs and the Class to perform;

(g) Whether the work performed by Plaintiffs and the Class is compensable pursuant to the FLSA and Nebraska state law;

(h) Whether Defendant has engaged in a pattern and/or practice of forcing, coercing, and/or permitting Plaintiffs and the Class to perform work for Defendant's benefit that was not compensated;

(i) Whether Defendant has entered into oral contracts or other contracts with Plaintiffs and the Class that Defendant has breached;

(j) Whether Defendant has made agreements and promises with Plaintiffs and the Class by virtue of Defendant's own disseminated policies and other statements that it has failed to follow;

    (k) Whether Defendant has failed to permit Plaintiffs and the Class to have meal and rest periods as required by Defendant's own policies;

    (l) The nature and extent of class-wide injury and the measure of damages therefore; and

    (m) The proper formula for calculating restitution, damages and penalties owed to Plaintiffs and the Class.

  18. The claims of Plaintiffs are typical of the claims or defenses of the Class.

  19. The Class is so numerous that joinder of all members is impracticable.

  20. Plaintiffs will fairly and adequately represent and protect the interests of the Class.  Plaintiffs have retained counsel competent and experienced in complex employment class action and collective action litigation.

  21. Class certification of Plaintiffs' Nebraska state law claims is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendant, and/or because adjudications with respect to individual Class members would as a practical matter be dispositive of the interests of non-party Class members.

  22. Class certification of Plaintiffs' Nebraska state law claims is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the class, making appropriate both declaratory and injunctive relief with respect to the Class as a whole.  The members of the Class are entitled to injunctive relief to end Defendant's common and uniform practices of denying the Class the wages to which they are entitled.

23.     Class certification of Plaintiffs' Nebraska state law claims is also appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Class predominate over questions affecting only individual members of the Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

24.     Plaintiffs know of no difficulty that would be encountered in the management of this litigation that would preclude its maintenance as a class action.

25.     The class is ascertainable, because the names and addresses of the members of the Class are readily available from Defendant.

## FIRST CAUSE OF ACTION
### Failure to Pay Overtime Wages in Violation of the FLSA
### 29 U.S.C. § 207

26.     Plaintiffs re-allege and incorporate the above paragraphs as though fully set forth herein.

27.     As described above, Defendant has failed to pay Plaintiffs and the Class for all hours of work they perform.  When this "off-the-clock" time is included, Plaintiffs and the Class routinely work in excess of 40 hours in a week.  As a result, Defendant has violated the FLSA, 29 U.S.C. § 207, by failing to pay Plaintiffs and the Class overtime compensation at time-and-one-half their regular non-exempt rate of pay.

28.     Defendant has willfully violated the FLSA.  As a result, Defendant is liable to the Class for liquidated damages in an amount equal to the wages Defendant has failed to pay as a result of the foregoing violation.

29.     Plaintiffs and the Class are entitled to all of the overtime wages they are owed, as well as costs and attorneys' fees they have expended in bringing this action to recover their unpaid wages.

**SECOND CAUSE OF ACTION**
**Failure to Pay Minimum Wage in Violation of the FLSA**
**29 U.S.C. § 206**

30. Plaintiffs re-allege and incorporate the above paragraphs as though fully set forth herein.

31. As described above, Defendant has failed to pay Plaintiffs and the Class for all hours of work they perform. When this "off-the-clock" time is included as time worked, Defendant fails to pay Plaintiffs and the Class the federally mandated minimum wage in violation of 29 U.S.C. § 206.

32. Defendant has willfully violated the FLSA. As a result, Defendant is liable to Plaintiffs and the Class for liquidated damages in an amount equal to the wages Defendant failed to pay as a result of the foregoing violation.

33. Plaintiffs and the Class are entitled to all of the wages they are owed, as well as costs and attorneys' fees they have expended in bringing this action to recover their unpaid wages.

**THIRD CAUSE OF ACTION**
**Violation of the Nebraska Wage and Hour Act**
**R.R.S. Neb. §§ 48-1201-1209**

34. Plaintiffs re-allege and incorporate the above paragraphs as though fully set forth herein.

35. Defendant has willfully failed to pay Plaintiffs and the Class for all hours of work they perform. When this "off-the-clock" time is included as time worked, Defendant fails to pay Plaintiffs and the Class the minimum wage as required by the Nebraska Wage and Hour Act.

36. Plaintiffs and the Class are entitled to all of the wages they are owed, as well as costs and attorneys' fees they have expended in bringing this action to recover their unpaid wages.

## FOURTH CAUSE OF ACTION
### Violation of the Nebraska Wage Payment and Collection Act
### R.R.S. Neb. §§ 48-1228-1232

37.     Plaintiffs re-allege and incorporate the above paragraphs as though fully set forth herein.

38.     The class period for this Cause of Action is March 4, 2004 to the present. Therefore, the class definition applicable to this Cause of Action is all current and former non-exempt, hourly production and support employees who have been employed at any time by Defendant at its Omaha, Nebraska processing facility during the time period March 4, 2004 to the present, and who use personal protective equipment (also referred to in this count as the "Class").

39.     As described above, Defendant has willfully failed to pay Plaintiffs and the Class for all hours of work they perform.  This violates the Nebraska Wage Payment and Collection Act, which requires that employees be paid for all work they perform.

40.      Plaintiffs and the Class are entitled to all of the wages they are owed, as well as costs and attorneys' fees they have expended in bringing this action to recover their unpaid wages.

## FIFTH CAUSE OF ACTION
### Breach of Contract

41.     Plaintiffs re-allege and incorporate the above paragraphs as though fully set forth herein.

42.     The class period for this Cause of Action is March 4, 2004 to the present. Therefore, the class definition applicable to this Cause of Action is all current and former

10

non-exempt, hourly production and support employees who have been employed at any time by Defendant at its Omaha, Nebraska processing facility during the time period March 4, 2004 to the present, and who use personal protective equipment (also referred to in this count as the "Class").

43. Defendant, through its employees/managers/agents, made oral offers of employment to Plaintiffs and the Class via telephone or in person at Defendant's facility, the terms of which did not materially vary as between Class members, *i.e.*, that Plaintiffs and the Class would be paid at a fixed hourly rate for all work performed on behalf of Defendant and would be paid an overtime rate at time and one-half and as set forth herein.

44. Plaintiffs and the Class accepted Defendant's oral offers of employment.

45. Pursuant to their oral contracts with Defendant, Plaintiffs and the Class performed work on behalf of and for the benefit of Defendant as set forth herein.

46. However, Defendant breached its oral contracts with Plaintiffs and the Class (*i.e.*, the same contract that was made with each employee) by deliberately failing to pay Plaintiffs and the Class members for all hours worked on behalf of Defendant, and Plaintiffs and the Class have suffered damages as a result.

47. More specifically, in offering to employ Plaintiffs and the Class, Defendant has at all times since March 4, 2004 agreed and promised and maintained an official policy to pay for all time worked, plus overtime at time and one-half for time worked in excess of 8 hours in a day and 40 hours in a week.

48. In agreeing to work for Defendant, Plaintiffs and the Class accepted Defendant's agreement and promise to pay them for all time worked, plus overtime at time and one-half for time worked in excess of 8 hours in a day and 40 hours in a week.

49. Defendant has breached its agreement, promise and policy to pay Plaintiffs and the Class for all time worked, plus overtime at time and one-half for time worked in excess of 8 hours in a day and 40 hours in a week.

50. Similarly, Plaintiffs and the Class accepted Defendant's promise and/or agreement and/or policy that it would compute and pay straight time and overtime to Plaintiffs and the Class in quarter-hour increments, such that if an employee works one minute past the quarter hour, his/her time is "rounded upward," and he/she is paid for the entire next quarter hour. In fact, Defendant has breached this promise, agreement and policy.

51. Similarly, Plaintiffs and the Class have accepted Defendant's promise and/or agreement and/or policy that its non-exempt employees are to receive, each day, one uninterrupted 20-minute break, plus 30 minutes of uninterrupted meal time. In fact, Defendant has breached this promise, agreement and policy. For example, the thirty-minute lunch break on the Fabrication side of Defendant's plant is signified by a bell. During lunch, a warning bell rings after 25 minutes, signifying that employees must return to their work stations. A second bell rings at 30 minutes. By the time this second bell rings, employees must be fully dressed and standing at their workstations, ready to resume their work. Class members are, thus, deprived of a full 30 minutes of uninterrupted meal time.

52.     Similarly, Defendant has failed to grant or give the 20-minute break. Instead, it gives a shorter break, which itself is illusory. Non-exempt employees who are required to "swap out" their bloodied or cut gloves must do so during their break, for which they must line up at the Supply Room (there is one Supply Room to serve the more than 400 employees on the "Fabrication" side, and one to serve the more than 200 employees on the "Slaughter" side). Some of the gloves come in sizes, and the replacements must be obtained from bins in the Supply Room. Employees must wait in line and then wait for the Supply Room attendant to get the proper size gloves. Employees' break time is interrupted to swap-out their gloves.

53.     At least since March 4, 2004, it has been Defendant's promise and/or agreement and/or policy to provide an additional ten minutes of pay in lieu of a second break when the employee works more than nine hours. In fact, Defendant has breached this promise, agreement and policy.

54.     In practice, the time worked by Plaintiffs and the Class is recorded manually (*i.e.*, not by any objective system such as a time-clock or other punch-in/punch-out system). The time worked by Plaintiffs and the Class is recorded manually and purportedly on a contemporaneous basis by shift supervisors on "Gangsheets." In actuality, this does not occur. Workers are only paid for time actually spent on their line while the line is moving, despite continuing to perform duties as described herein after their line has stopped for the day.

55.     Defendant's Payroll Department then automatically adds five minutes to the total of Plaintiff and each Class members' hours for "Equipment Clothes Change,"

even when the amount of time it takes to don and doff PPE throughout the day and engage in other related activities takes much longer than five minutes.

56.     The Payroll Department then automatically deducts thirty minutes from Plaintiff and each Class members' recorded time for a meal period, even though Plaintiffs and the Class are systematically and continually deprived on a daily basis of a full, uninterrupted 30-minute meal period.

57.     Defendant's stated policies are uniform and disseminated to Plaintiffs and the Class, and are embossed on the oral contracts that Defendants enter into with Plaintiffs and the Class before they begin working for Defendant.

58.     The work performed by Plaintiffs and the Class constitutes consideration for their agreement with Defendant that they are to be paid what was promised to them at the outset of their employment and pursuant to Defendant's stated policies.

59.     Accordingly, Defendant has breached and remains in breach of its contractual duties to Plaintiffs and the Class, and Plaintiffs and the Class are entitled to damages in an amount to be proved at trial.

## SIXTH CAUSE OF ACTION
### Unjust Enrichment

60.      Plaintiffs re-allege and incorporate the above paragraphs as though fully set forth herein.

61.     The class period for this Cause of Action is March 4, 2004 to the present. Therefore, the class definition applicable to this Cause of Action is all current and former non-exempt, hourly production and support employees who have been employed at any time by Defendant at its Omaha, Nebraska processing facility during the time period

March 4, 2004 to the present, and who use personal protective equipment (also referred to in this count as the "Class").

62. In the alternative that the Court does not find that Plaintiffs had an oral or other contract with Defendant, Defendant has received and benefitted from the uncompensated labors of Plaintiffs and the Class, and for Defendant to retain this benefit without compensation would be inequitable and would rise to the level of unjust enrichment.

63. Plaintiffs and the Class have a reasonable expectation that they will be paid all amounts to which they are entitled pursuant to promises and agreements made by Defendant, for having risked their safety and for having given their time and efforts to Defendant.

64. Defendant carefully tracks the compensation paid to Plaintiffs and the Class as a measure of profit calculation. Underpayment of wages to Plaintiffs and the Class directly increases Defendant's profit.

65. At all relevant times hereto, Defendant devised and implemented a plan to increase its earnings and profits by fostering a scheme of securing uncompensated work from Plaintiffs and the Class.

66. Contrary to all good faith and fair dealing, Defendant instructed and encouraged its managers and supervisors to induce Plaintiffs and the Class, by actual or threatened retaliation and/or promises, to perform the unpaid work alleged in this Complaint, for which no compensation has been paid.

67. By underpaying Plaintiffs and the Cass, Defendant has been and is unjustly enriched. More specifically, by reason of having secured the work and efforts of

15

Plaintiffs and the Class without compensation, Defendant enjoyed reduced overhead with respect to its production activities and has therefore realized additional earnings and profits for its own benefit and to the detriment of Plaintiffs and the Class.

68. Defendant has retained and continues to retain such benefits contrary to the fundamental principles of justice, equity, and good conscience.

69. Defendant's wrongful conduct is so offensive to common values as to merit redress by way of exemplary or punitive or other damages for the Class members, from Defendant, in an amount to be determined.

70. Accordingly, Plaintiffs and the Class are entitled to judgment in an amount equal to the benefits unjustly retained by Defendant, to be proved at trial.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

1. That this Court permit this action to proceed as a "collective action" under 29 U.S.C. § 216(b);

2. That this Court permit this action to proceed as a "class action" under Fed. R. Civ. P. 23;

3. That Defendant be ordered to pay all unpaid wages and other damages to Plaintiffs and the Class;

4. That Defendant be enjoined from continuing the unlawful policies described herein;

5. That this Court order Defendant to pay liquidated damages, punitive damages and all other available penalties to Plaintiffs and the Class;

6. That this Court award to Plaintiffs all statutory penalties, interest, and attorneys' fees and costs to which they are entitled; and

7. And such other relief as the Court deems appropriate.

Dated: June 3, 2009

                                   Respectfully submitted,

                                   /s/

Todd M. Schneider (admitted *pro hac vice*)
Carolyn H. Cottrell (admitted *pro hac vice*)
W.H. "Hank" Willson, IV (admitted *pro hac vice*)
SCHNEIDER WALLACE
COTTRELL BRAYTON KONECKY LLP
180 Montgomery Street, Suite 2000
San Francisco, California 94104
Tel: (415) 421-7100
Fax: (415) 421-7105
tschneider@schneiderwallace.com
ccottrell@schneiderwallace.com
wwillson@schneiderwallace.com

Russell D. Henkin (*pro hac vice* pending)
Shanon J. Carson (admitted *pro hac vice*)
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, Pennsylvania 19103
Tel: (215) 875-4656
Fax: (215) 875-4604
rhenkin@bm.net
scarson@bm.net

Philip A. Downey (admitted *pro hac vice*)
P.O. Box 736
Unionville, Pennsylvania 19375
Tel: (610) 324-2848
Fax: (610) 347-1073
downeyjustice@gmail.com

Christopher P. Welsh (State Bar No. 22279)
WELSH & WELSH, P.C., L.L.O.
2027 Dodge Street, Suite 400
Omaha, Nebraska 68102

17

Tel: (402) 384-8160
Fax: (402) 384-8211
cwelsh@welsh-law.com

Attorneys for Plaintiffs and the Class

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

**CERTIFICATE OF SERVICE**

I hereby certify that on June 3, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

| | |
|---|---|
| Brian J. Brislen | bbrislen@ldmlaw.com, rebeccal@ldmlaw.com |
| Shanon J. Carson | scarson@bm.net |
| Carolyn H. Cottrell | ccottrell@schneiderwallace.com, efilings@schneiderwallace.com, evancampen@schneiderwallace.com |
| Philip A. Downey | downeyjustice@gmail.com |
| Michael Hamilton | mhamilton@provostumphrey.com, lheembrock@provostumphrey.com |
| William M. Lamson, Jr | wlamson@ldmlaw.com, amyk@ldmlaw.com |
| Brian P. McCafferty | cafstar@aol.com |
| Todd M. Schneider | tschneider@schneiderwallace.com, efilings@schneiderwallace.com |
| William R. Settles | wrs@ldmlaw.com, jray@ldmlaw.com |
| Christopher P. Welsh | cwelsh@welsh-law.com |
| James R. Welsh | jwelsh@welsh-law.com |
| W. Hank Willson, IV | wwillson@schneiderwallace.com, efilings@schneiderwallace.com |

  s/ W.H. "Hank" Willson, IV
W.H. "HANK" WILLSON, IV
California Bar No. 233321
SCHNEIDER WALLACE
COTTRELL BRAYTON KONECKY LLP
180 Montgomery Street, Suite 2000
San Francisco, CA  94104
Tel:  (415) 421-7100
Fax:  (415) 421-7105
wwillson@schneiderwallace.com

1