# UNITED STATES DISTRICT COURT
## DISTRICT OF NEBRASKA

| | |
|---|---|
| FERMIN CORTEZ, *et al*., <br><br> and <br><br> DAVID CHUOL, *et al*., on behalf of themselves and all others similarly situated, <br><br>            Plaintiffs, <br><br> vs. <br><br> NEBRASKA BEEF, LTD. and NEBRASKA BEEF, INC. <br><br>            Defendants. | Case Nos. 8:08-cv-00090 and 8:08-cv-00099 |

## PLAINTIFFS' OMNIBUS MOTIONS *IN LIMINE* AND MEMORANDUM OF LAW IN SUPPORT

Plaintiffs respectfully move the Court to preclude Defendants' witnesses and defense counsel from testifying, referencing, arguing, mentioning in testimony, questions or comments or submitting documentary evidence concerning certain topics at trial. Specifically, Plaintiffs seek to exclude:

1. **Evidence concerning the citizenship or immigration status of Plaintiffs or other class members;**

2. **Evidence of any arrest, criminal prosecution or conviction of Plaintiffs or other class members;**

3. **Evidence of any financial difficulties, foreclosures, bankruptcies, or civil or domestic relations actions involving Plaintiffs or other class members;**

4.    Evidence concerning employment of Plaintiffs or other class members at any company other than Nebraska Beef;

5.    Evidence and arguments concerning any disciplinary actions taken against Plaintiffs or other class members at Nebraska Beef;

6.    Legal materials, Department of Labor (DOL) investigations of other processing plants, or "industry practice" in support of Defendants' *de minimis* defense or any other defense;

7.    References to a Plaintiff's, or other class member's, failure to complain to Nebraska Beef, the DOL or another governmental agency that Plaintiffs and the class were not paid for all hours worked;

8.    References to Defendants' claim that they purportedly added five minutes to Plaintiffs' and class members' workday to don and doff PPE;

9.    Evidence that Defendants pay overtime pay for hours they deem to be work;

10.   Evidence from Nebraska Beef concerning the extent of the economic damages suffered by Plaintiffs and other class members in this case;

11.   Any reference to the financial condition of Nebraska Beef, the effect that a judgment against it may have on its business operations, insurance rates, or financial condition, including any reference to any planned or contemplated bankruptcy filing;

12.   Any reference to the fact that a principal of Nebraska Beef may be required to personally pay any judgment entered in this case;

13.   Any reference to Fermin Cortez;

14.     **Testimony from Defendants' expert, Dr. Fernandez, concerning any "allowances" allegedly given to Plaintiffs and other class members;**

15.     **Testimony from Dr. Fernandez concerning his elemental analysis;**

16.     **Testimony that Personal Protective Equipment (PPE) is not required or that the cleaning or sanitizing of PPE is not required;**

17.     **References to the number of potential class members who submitted opt-in forms in the case;**

18.     **Any reference to the circumstances under which Plaintiffs or other members of the class employed a lawyer, or that a motive, purpose or result of this lawsuit is or will be to compensate Plaintiffs' lawyers;**

19.     **Any reference to the fact that Plaintiffs or other class members objected to any written discovery request, asserted a claim of privilege, moved to exclude certain evidence from the trial, including but not limited to the items contained in this motion *in limine*, during the pretrial phase of this case;**

20.     **Any reference, speculation or argument about the substance of the testimony of any witness who is absent or unavailable, or whom Plaintiffs did not call to testify;**

21.     **The calling of any witness in Defendants' case in chief that Defendants refuse to produce in Plaintiffs' case in chief;**

22.     **The calling of Plaintiffs' attorneys to testify;**

23.     **Excluding witnesses from the courtroom at all times other than when they are called to testify;**

24.     **Any documents or witnesses not disclosed during discovery;**

25.    Any reference or argument concerning attorneys' fees or the cost of
        litigation;

26.    Any references to the content or fact of any settlement discussions or
        negotiations; and

27.    Any reference to Plaintiffs' counsel's involvement in any other donning and
        doffing, employment or class action litigation.

## LEGAL STANDARDS FOR ADMISSIBILITY

Federal Rule of Evidence 402 excludes all evidence that is not relevant.  FRE 402.
"Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of
consequence to the determination of the action more probable or less probable than it would be
without the evidence." FRE 401.  Accordingly, in order to be admissible, "(1) the evidence must
be probative of the proposition it is offered to prove, and (2) the proposition to be proved must
be one that is of consequence to the determination of the action."  *United States v. Glasser*, 773
F.2d 1553, 1560 n.4 (11th Cir. 1985); *see also* Fed. R. Evid. Advisory Committee Notes
("Relevancy is . . . a relation between an item of evidence and a matter properly provable in the
case.").

Even evidence that may be admissible under FRE 401 and FRE 402 will nonetheless be
excluded under FRE 403 where such evidence causes a risk of unfair prejudice, confusion of the
issues before the jury, or the potential for wasteful mini-trials within the trial. Rule 403 excludes
evidence that, while relevant, is "substantially outweighed by the danger of unfair prejudice,
confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of
time, or needless presentation of cumulative evidence."  FRE 403.  This includes exclusion of

evidence where admitting the evidence would waste the court's time with extensive presentation of testimony and information on peripheral issues.

## ARGUMENT

### 1.      References to Citizenship or Immigration Status Are Irrelevant and Prejudicial

Evidence concerning the status of an individual Plaintiff's or class member's citizenship or immigration status is irrelevant to this case and carries a high risk of prejudice.  This is an action challenging Defendants' policy and practice of requiring its non-exempt, hourly production and support employees to work substantial amounts of time "off-the-clock" and without pay, and their policy of failing to provide line workers with the meal and rest periods to which they are entitled by law.  There is no justifiable reason for Defendants to raise the issue of immigration status or ask any Plaintiff or class member about his or her immigration documentation at trial.  Evidence of an employee's immigration status is wholly irrelevant, on any grounds, to a claim to recover minimum or overtime wages illegally withheld under federal and state wage and hour laws or in contravention of an employment contract.

Evidence concerning any Plaintiff's or class member's citizenship or immigration status should be excluded as irrelevant under FRE 402.  Immigration status evidence must be excluded, where, as here, it is not relevant to the asserted claims. *See Vanek v. I.I., Inc.,* 2007 WL 24446277 (D. Neb. Aug. 14, 2007) (granting motion *in limine* concerning immigration status in discrimination case).

It is well-settled that immigration status is not relevant to wage and hour claims under federal or state wage and hour laws.  Courts have routinely held that all employees, regardless of immigration status, are protected by the provisions of the FLSA and that immigration status bears no relevance to a claim for unpaid wages. *See, e.g., Flores v. Amigon*, 233 F. Supp. 2d 462,

463 (E.D.N.Y. 2001) ("[n]umerous lower courts have held that all employees, regardless of their immigration status, are protected by the provisions of the FLSA"); *In re Reyes*, 814 F.2d 168, 170 (5th Cir. 1987) ("it is well established that the protections of the Fair Labor Standards Act are applicable to citizens and aliens alike and whether the alien is documented or undocumented is irrelevant").

Testimony concerning Plaintiffs' and other class members' immigration status should also be excluded from consideration pursuant to FRE 403, which provides that even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice."  There can be no question that farm workers of Hispanic descent are a marginalized group in our society.  Injecting issues of immigration status into this case, where immigration status is entirely irrelevant, would create a great risk of prejudicing a jury against the workers and obscuring the issues related to the workers' employment rights.

Accordingly, courts have routinely held that evidence touching on a plaintiff's immigration status is not admissible in wage and hour cases such as this one due to the high probability of prejudice.  *See, e.g., Flores,* 233 F. Supp.2d at 465 ("[n]ot only does this Court find that the information is not relevant to Defendants' defense, but . . . even if it were, the potential for prejudice far outweighs whatever minimal probative value such information would have.").  Courts have also noted the chilling effect that such an inquiry into immigration status would have:

> Courts have generally recognized the *in terrorem* effect of inquiring into a party's immigration status when irrelevant to any material claim.  In particular, courts have noted that allowing parties to inquire about the immigration status of other parties, when not relevant, would present a 'danger of intimidation [that] would inhibit plaintiffs in pursuing their rights.'

*Topo v. Dhir*, 210 F.R.D. 76, 78 (S.D.N.Y. 2002).  Likewise, in *In re Reyes*, 814 F.2d at 170, the

Fifth Circuit explained the pernicious effect of inquiring into immigration status:

> The district court, however, in this case ordered discovery as to information which
> was completely irrelevant to the case before it and was information that could
> inhibit petitioners in pursuing their rights in this case because of possible
> collateral wholly unrelated consequences, because of embarrassment and inquiry
> into their private lives which was not justified, and also because it opened for
> litigation issues which were not present in the case.

Because inquiry into immigration status is unfair to Plaintiffs and other class members

and misleading and confusing for the jury, and Defendants can present no compelling reason to

contravene well-established precedent prohibiting evidence of immigration status in the context

of wage and hour actions, Defendants should not be permitted to examine Plaintiffs or other class

members on this topic, or otherwise introduce evidence or references to their immigration status.

**2.**      **References to Any Plaintiff's or Other Class Member's Criminal History Is**
            **Irrelevant and Prejudicial**

Plaintiffs respectfully request that this Court bar witnesses and Defendants' counsel from

referencing or mentioning in testimony, statements, arguments, questions or comments any

arrests, prosecutions or convictions of Plaintiffs or other class members.

In this case, Plaintiffs' claims are straightforward and are largely based on whether

Defendants' "line time" compensation practice violates the provisions of the Fair Labor

Standards Act, state law and the parties' employment agreement.  To evaluate Plaintiffs' claims,

the jury must simply determine whether the compensation practices at issue capture all of the

time Plaintiffs and other class members worked for Nebraska Beef.  Many of the facts

concerning Plaintiffs' compensation dispute are documented.  Accordingly, for the most part, the

jury will not be required to make inferences as to the credibility or truthfulness of witnesses.

Instead, the jury will apply the law (as instructed by the Court) to the facts of the case.

Evidence concerning the criminal history of a single Plaintiff or class member has absolutely no relevance to the issues in this case.  Evidence concerning criminal charges not resulting in conviction fails to meet the threshold of relevance set forth in FRE 402.  *See Doe v. Elwood Public School Dist.*, 2007 WL 2257329 (D. Neb. Aug. 3, 2007) at *2.  Additionally, introduction of testimony and evidence concerning any such convictions would create the risk of misleading, and/or unfairly prejudicing the jury in contravention of FRE 403 and would constitute an improper introduction of character evidence in contravention of FRE. 404.  *Id.*

Any criminal convictions for offenses not punishable by more than one year of incarceration and/or convictions for offenses involving dishonesty or false statement would likewise be irrelevant under FRE 401's standards.  *Id.*  As above, the introduction of testimony or evidence concerning these types of criminal offenses would mislead and unfairly prejudice the jury in contravention of FRE 403.  *Id.*  Additionally, this type of evidence would constitute an improper introduction of character evidence in contravention of FRE 404 and FRE 609.  *Id.*

The risk of prejudice and irrelevance of any criminal conviction are heightened in a multi-plaintiff or class action case like this one.  Therefore, the criminal history of any single Plaintiff or class member, even if it involves a conviction for a crime carrying a possible punishment of greater than a year of incarceration or dishonesty, should not be entered into evidence due to the profound risk that it would unfairly prejudice that individual's co-litigants.

For all of these reasons, Plaintiffs respectfully request that any references to the criminal history of any Plaintiff or other class member be excluded from the trial in this matter.

**3.**     **Evidence of Any Plaintiff's or Other Class Member's Financial Difficulties, Domestic Relations or Civil Suits Should Be Precluded**

Plaintiffs seek to exclude references to any financial difficulties, foreclosures, bankruptcies or civil or domestic relations actions involving  Plaintiffs or other class members.

Evidence pertaining to these matters lacks any relevance to the claims in this case and should be barred from the trial pursuant to FRE 402.

It is self-evident that the only conceivable purpose for introducing such evidence would be to prejudice Plaintiffs and the class by creating a false and misleading impression that, as a group, they are of poor character. Any focus on Plaintiffs' and class members' activities outside of work at Nebraska Beef runs the risk of creating undue prejudice, given the lack of relevancy of these activities. As the likelihood of potential prejudice outweighs any possible relevance of this testimony concerning Plaintiffs or other class members, this evidence should be excluded under FRE 403.

Additionally allowing the introduction of evidence concerning bankruptcies, financial difficulties, domestic relations matters or unrelated civil suits would cause the trial to devolve into a wasteful series of mini-trials, which would unnecessarily complicate this action and confuse the jury. Plaintiffs should not be required to present time-consuming evidence to rebut Defendants' irrelevant evidence of matters outside the employment relationship, which have no bearing on the central issues in this case. Consideration of this tangential evidence would waste the Court's and the jury's time in violation of FRE 403.

4.   **Plaintiffs' and Other Class Members' Employment At Companies Other Than Nebraska Beef Lacks Relevance**

This action concerns the compensation policies and practices at Nebraska Beef's facility alone. Discussion of the specific circumstances of Plaintiffs' or other class members' employment at any other company or facility is not relevant to the issues in this case. The introduction of such evidence would consume considerable court time and would, at best, be of little, if any, probative value under FRE 401. Defendants should not be allowed to present evidence of Plaintiffs' or other class members' employment outside of Nebraska Beef on the

grounds of relevancy.  Additionally, the introduction of such evidence runs the risk of creating

undue prejudice against Plaintiffs and the class in violation of FRE 403.

The introduction of this category of evidence in particular would likely cause the trial to

devolve into a wasteful series of mini-trials, which would unnecessarily complicate this action

and confuse the jury.  If Defendants are permitted to introduce such evidence, Plaintiffs will be

forced to call witnesses and offer additional testimony to rebut that evidence, which has no

bearing on Plaintiffs' claims. Rule 403 specifically bars the introduction of such wasteful and

confusing evidence. FRE 403 (excluding evidence that is "substantially outweighed by . . .

confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of

time").

5.      **Disciplinary Actions Taken Against Plaintiffs or Other Class Members Lack Relevance and Are Prejudicial**

Plaintiffs move to exclude all documentary evidence and testimony concerning

Plaintiffs' or other class members' disciplinary records at Nebraska Beef for all purposes,

including impeachment.  Plaintiffs' and class members' work conduct is not at issue in this case.

Thus, any reference to, or evidence concerning, Plaintiffs' or other class members' disciplinary

records lacks any relevance and is inadmissible at trial under FRE 402.

Any argument by Defendants that the introduction of Plaintiffs' or other class members'

disciplinary records is relevant to show that a Plaintiff or other class member acted in conformity

with the actions at issue in a particular disciplinary incident is prohibited by FRE 404(b), which

prohibits the admission of evidence of bad acts offered merely to prove bad character or

conformance with that character on a given occasion.  This rule reflects the judgment of the

Advisory Committee on Rule 404 that:

Character evidence is of slight probative value and may be very prejudicial. It tends to distract the trier of fact from the main question of what actually happened on the particular occasion. It subtly permits the trier of fact to reward the good man and to punish the bad man because of their respective characters despite what the evidence in the case shows actually happened.

A jury hearing evidence concerning a Plaintiff's or other class member's disciplinary history at Nebraska Beef may make inferences concerning that Plaintiff or all class members' behaviors at work. These inferences are impermissible. As evidence of Plaintiffs' or other class members' disciplinary records is not relevant to any issue in the case, Rule 404 mandates that it be excluded.

FRE 403 also requires the exclusion of Plaintiffs' or other class members' disciplinary records due to the risk of unfair prejudice, confusion of the issues and waste of time, which substantially outweigh any probative value of the evidence. As the Advisory Committee to Rule 403 noted:

'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Evidence of any Plaintiff's disciplinary record may unfairly prejudice the jury against the plaintiff and the merits of his case. Such a result contravenes the policies underlying Rule 403, and such evidence should be excluded.

Aside from prejudicing the jury, evidence concerning Plaintiffs' or other class members' disciplinary records at Nebraska Beef is likely to confuse the issues presented to the jury. A jury that is distracted by the facts and details of Plaintiffs' or other class members' disciplinary records might be confused about the weight and relevancy of this evidence in making the determination of whether Defendants failed to pay Plaintiffs and the class for all of the hours they worked.

Additionally, the introduction of this irrelevant evidence would waste the Court's and the jury's time. If Defendants are allowed to introduce this evidence, they will have to call witnesses

to each alleged incident not only to testify, but also to authenticate any related documents.  This Court should not tolerate such a waste of time and resources on collateral issues.  Because the prejudicial effect of Plaintiffs' and other class members' disciplinary record outweighs any probative value, evidence thereof cannot be used for impeachment under Rule 609.

In sum, based on the improper use of this character evidence, the inescapable prejudice to Plaintiffs, the danger of confusing the issues and the unnecessary waste of time, this evidence should be excluded in its entirety.

6.    **Evidence Concerning Actions Against Other Processing Plants Or "Industry Practice" Designed to Support Defendants' *De Minimis* Defense or Any Other Defense Is Immaterial**

In support of a "*de minimis*" defense, or some other defense, Defendants may seek to introduce evidence of court decisions and other lawsuits filed by the Department of Labor (DOL) or private parties against meat or poultry processors to show that Nebraska Beef's practice of failing to pay its workers for all hours worked was commonplace in the meat and poultry processing industries.  However, evidence concerning legal or regulatory actions against other meat and poultry processors is irrelevant under FRE 401 and 402 in this case, which involves activities in a single Nebraska Beef facility.  Evidence regarding other processors does not, in any way, concern the amount of time actually worked by any worker at the Nebraska Beef facility.  The introduction of this type of evidence would require the Court and the jury to consider far-flung evidence that would open the door to even more tangential evidence to counter the suggestions made.  In the end, this entire exercise would be for no purpose, as the entirety of the evidence is simply irrelevant to the questions facing this Court.

Furthermore, exclusion is justified because the probative value of introducing such extraneous and unrelated evidence is substantially outweighed by the danger of unfair prejudice,

confusion of the issues, or misleading the jury as well as by considerations of undue delay, waste

of time, and needless presentation of cumulative evidence.  *See* FRE 403.  In addition, presenting

evidence concerning court decisions and DOL opinion letters is likely to mislead and confuse a

jury and to usurp the power of the Court, whose duty it is to determine the applicable law and to

instruct the jury on what the law is.  *See, e.g., United States v. Zipkin*, 729 F.2d 384, 387 (6th Cir.

1984).

### 7.  Evidence Concerning Plaintiffs' or Other Class Members' Failure to Complain About Non-Payment Is Irrelevant and Prejudicial

Defendants may argue that certain Plaintiffs, or the entire group of class members, failed

to complain to supervisors at Nebraska Beef or to any governmental agency that they were not

being paid for all of their hours worked in violation of federal and state law and the terms of their

employment agreements.  Such testimony, evidence or argument should be excluded as

irrelevant and prejudicial and because it would cause the needless presentation of evidence that

would waste the Court's and the jury's time.

This case concerns the actions of the Defendants.  Whether or not the Defendants paid

Plaintiffs and the class for all hours worked is the central issue of the case.  In this context, only

evidence concerning the Defendants' actions, as opposed to evidence concerning the actions of

Plaintiffs and the class, is relevant to this inquiry.  Whether or not Plaintiffs or other class

members registered internal or external complaints about the fact that they were not being paid

for all of the hours they worked is irrelevant.  There are a multitude of reasons why Plaintiffs or

other class members might not have complained about the underpayment.  They may have been

fearful of retaliation; they may not have been aware of the fact or extent of their underpayment;

they may not have known how or to whom to complain.  Given that there are a variety of

plausible reasons why Plaintiffs and other members of the class may not have complained,

evidence concerning the lack of complaints is not probative and is therefore irrelevant under FRE 401 and should be excluded under FRE 402.

Additionally, testimony concerning Plaintiffs' or other class members' failure to complain is prejudicial and is likely to confuse the issues before a jury.  A juror may attach undue significance to the lack of a complaint, even though federal and state law do not require a worker to have complained at all, in order to file suit.  Given the potential for prejudice and confusion and the lack of relevance of this evidence, references to any lack of internal or external complaints by Plaintiffs or other class members should be excluded from trial under FRE 401-403.

### 8.     Evidence That Defendants Purportedly Paid Plaintiffs and Other Class Members Five Minutes For Donning and Doffing Activities Should Be Precluded

Plaintiffs seek to exclude any defense reference to a 5-minute "allowance" allegedly paid to Nebraska Beef employees for time spent for donning and doffing.  During discovery, a key executive of Nebraska Beef -- the Superintendent of the entire Fabrication side of the plant -- admitted that Nebraska Beef duped its employees on the timesheets.  Although Nebraska Beef indicated on employee timesheets that it was providing employees with five minutes of donning and doffing time, in reality, Nebraska Beef was subtracting five minutes from each employee's true work time and then adding back the same five minutes as sham donning and doffing time.  Defendants should not be permitted to introduce evidence of this 5-minute "allowance" under FRE 403 because this evidence is both prejudicial and likely to confuse the jury.  Defendants should not be rewarded for their chicanery by being allowed to confuse the jury with evidence that lacks credibility.

Nebraska Beef attempts to demonstrate that it complied with the FLSA by pointing to language contained at the top of its gang sheets, that states: "Equipment Clothes Change Plus 5

Minutes" (Ex. 1).   In reality, this 5-minute "allowance" was not followed as Nebraska Beef's

policy.  Nebraska Beef did not even satisfy its burden of documenting the actual shift start, shift

stop times, or the actual time worked by its employees wearing PPE, nor did Nebraska Beef use

any sort of time clock.  Instead of recording the shift start time, Nebraska Beef simply announced

when the shift would start and instructed the shift supervisor to record that time as the shift start

time.  Nebraska Beef employed the same process with respect to the shift end time.  It was Tony

Joy, the Superintendent of Fabrication, who revealed that the supposed 5-minute "allowance"

itself was illusory.

At his deposition, relevant excerpts of which are attached as collective Exhibit 3, Mr. Joy

was shown a gangsheet (D 015781) (Ex. 2) "recording" the employee start time as 6:00 and the

stop time as 11:00.  Mr. Joy interjected that the stop time should have been recorded as 10:55,

not as 11:00. (Joy Dep. Tr. at 199, l. 8-22) (Ex. 3); *see also id.* at 200, l. 3-5.

Mr. Joy explained that a supervisor was actually supposed to subtract five minutes from

the real time that an employee ended work.  He testified:

> Q:      Is it also that the-- in your view, the supervisor should have written 10:55 if the
> person left at 11:00?
>
> A:      That's correct, 10:55.

*Id.* at 200.  The following direct colloquy underscores Mr. Joy's earlier testimony:

> Q:      And Maria started at 6:00 and left at 2:30.  Does Maria deserve the extra 5?
>
> A:      Maria deserves the extra five.
>
> Q:       And so Maria deserves as her end time 2:40 if, in fact, she worked to 2:30?[1]
> That's correct.  If Maria worked until 2:30, given the additional five minutes, then
> her time should have been 2:40.

[1] Mr. Joy had testified that if an employee's work took him or her beyond the exact time of a quarter-hour, it was to
be "rounded up" to the following quarter-hour.  Thus, a worker who worked until 3:05 was to be given the extra ten
minutes, to 3:15.

Q:     And-- and her total hours should have been 8.25 and not 8?

A:     That's correct.

Q:     And something is wrong with this time sheet.  The time is-- is inaccurate either in how many hours she got or in what was the-- the stop time?

A:     Correct.

Q:     And that's true for every one of them that I read?

A:     Yes.

Q:     And the policy is for Jennifer [Jennifer McElroy, Payroll] to add in the five minutes, isn't it?

A:     The supervisor writes down-- it's his responsibility to write down the stop time . . . so that Jennifer can add in the five minutes.  They will write down 2:20-- ***if we're done at 2:30, they will write down 2:25, and Jennifer will add in the five minutes, yes.***"  (Emphasis added).

*Id.* at 206-207.

Mr. Joy was specifically told, after that colloquy, that he would have the right to read and sign the transcript and to correct any errors in his own testimony where he misstated a fact. *Id.* at 216.  Yet, Mr. Joy never corrected his testimony or filed a single errata sheet.  This highly prejudicial evidence should be precluded under FRE 403 to avoid the risk of juror confusion.

**9.     Evidence That Defendants Paid Overtime Pay for Hours They Deemed Compensable Is Irrelevant**

At issue in the instant case is work hours that were not compensated by Defendants.  Any evidence that Defendants may offer concerning overtime compensation they paid to their workers is irrelevant under FRE 401 and 402.  Defendants deserve neither applause nor sympathy, nor a diminution of their liability, for having sometimes done what they had a statutory duty to do.   Any argued marginal probative value of evidence relating to overtime compensation already paid by Defendants (for hours that are not at issue) is potentially confusing to the jury and is thus prejudicial to Plaintiffs under FRE 403 in that it suggests that Defendants

16

have fully met the overtime requirements of the Fair Labor Standards Act.  This evidence simply

has no bearing on the specific questions at issue in this case, and the presentation of such

evidence (without further explanation at the time) could easily lead the jury to believe that

Defendants paid overtime compensation for some or all of the periods at issue in this case,

which, undoubtedly, they did not.  Additionally, allowing the introduction of evidence

concerning overtime compensation that is not at all at issue has the effect of wasting the Court's

and the jury's valuable time.  *See Ross v. Buckeye Cellulous Corp.,* 980 F.2d 684, 655 (11th Cir.

1993) (upholding a district court decision to exclude testimony that would "unnecessarily

prolong a trial").

**10.     Defendants Should Not Be Permitted To Offer Testimony Concerning The Extent of The Economic Damages Suffered by Plaintiffs or Other Class Members in this Case Because Defendants Did Not Adequately Disclose Any Expert Testimony On This Subject**

Rule 37(c) of the Federal Rules of Civil Procedure provides that:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Rule 26(a)(2) requires a party to disclose the identity of any witness it may use at

trial to present expert testimony under Federal Rule of Evidence 702, 703 or 705.  Rule

26(a)(2)(B) requires a party disclosing expert testimony to submit an written report that

contains (i) a complete statement of all opinions the witness will express and the basis for

them; (ii) the data or other information considered by the witness in forming them; (iii)

and exhibits that will be used to summarize them; (iv) the witnesses qualifications,

among other requirements.  Fed. R. Civ. P. 26(a)(2)(B)(i)-(vi).  Rule 26(a)(2)(C) requires

these disclosures to occur "at least 90 days before the date set for trial."

Defendants have failed to submit any expert evidence concerning the amount of economic damages suffered by the Plaintiffs.  Under Fed. R. Civ. P. 37(c), such evidence should be excluded from trial.

**11.    Evidence Concerning the Effects That a Judgment Against Nebraska Beef May Have On Its Financial Condition or Business Operations Must Be Precluded As Irrelevant and Prejudicial**

At trial, Nebraska Beef and its principals should be prohibited from offering testimony or evidence concerning their financial condition or net worth, ability to pay a judgment, and/or the effects that a judgment against them would have on their business, operations or insurance rates. Specifically, Defendants should be prohibited from mentioning or implying that Nebraska Beef would be required or expected to file for bankruptcy if judgment were entered against it.  Such testimony could be used by Defendants to attempt to inflame the jury or to create sympathy for themselves.  Such evidence or testimony is irrelevant under FRE 401 and 402.  Even assuming, *arguendo*, that it were relevant, this sort of testimony should be precluded on the grounds of prejudice, confusion, and/or waste of time pursuant to FRE 403.

**12.    No Reference Should Be Permitted To the Fact That a Principal of Nebraska Beef May Be Required to Personally Pay Any Judgment Entered In This Case**

Similarly, Defendants should be prohibited from offering testimony or evidence or otherwise suggesting that any of the principals of Nebraska Beef may personally pay all or part of any judgment entered against Defendants in this case.  Again, the sole purpose of such testimony would be to garner sympathy for Defendants rather than any legitimate evidentiary purpose.  Such testimony is irrelevant under FRE 401 and 402 and should also be precluded pursuant to FRE 403 because it is highly prejudicial to Plaintiffs, confusing to the jury and would constitute a waste of the Court's and the jury's time.

**13.**     <u>**Defendants Should Be Precluded From Referencing Fermin Cortez**</u>

       Fermin Cortez was withdrawn as a Plaintiff in this case because he did not wear PPE. Accordingly, reference to Mr. Cortez would be irrelevant to any issue in this case and would not be offered for a legitimate purpose. Therefore, such references should be excluded under FRE 401 and 402.

**14.**     <u>**Defendants' Expert Should Be Precluded From Discussing Any "Allowances" Allegedly Provided to Plaintiffs and Other Class Members Because His Conclusions Are Based on Improper Hearsay**</u>

       Defendants' expert, Dr. Jeffrey Fernandez, should be precluded from discussing any alleged "allowances" of time given to Nebraska Beef employees to don, doff, walk or wash.[2] Dr. Fernandez discussed alleged allowances given to line workers in the Nebraska Beef facility in both his deposition and expert report, excerpts of which are attached as Exhibits 4 and 5 to the Declaration of Ellen Noteware ("Noteware Decl."), filed herewith.

       According to Dr. Fernandez, an "allowance" is time given to the employees to don and doff, walk or wash. Fernandez Dep. Tr. at 179:14-22 (Ex. 5). Dr. Fernandez testified that Nebraska Beef provided numerous allowances to its employees, specifically pre-shift, pre-shift dwell, post-shift, post-shift dwell, break and stacking allowances. *Id*. at 179:24-180:6. However, Dr. Fernandez's knowledge and conclusions regarding these "allowances" was based purely on information provided to him by Nebraska Beef and its attorneys, rather than from any independent observation or confirmation. In his report, Dr. Fernandez described these allowances as "time credits provided to the Company *as per information provided to me by counsel and company*. . . ." Fernandez Report at p.7 (emphasis added) (Ex. 4.).

---

[2] Although the parties have agreed that they will reserve challenges to expert testimony under FRE 703 until a later time, Plaintiffs believe that they have not agreed to postpone challenges to expert testimony to the extent they are based on hearsay statements.

Dr. Fernandez repeatedly confirmed in his deposition that he had no reliable basis for determining that any allowance for donning and doffing activities actually occurred at Nebraska Beef.  The following colloquies occurred at his deposition:

> Q.  [] You say (as read):  "The company provides pre-shift, pre-shift dwell, post-shift, post-shift dwell, break, and stacking allowances to the employees at the Nebraska Beef facility."
>
> A.  Yes.
>
> Q.  How do you know that?
>
> A.  This was information provided -- this is information provided to us, and some of it we calculated.
>
> Q.  Okay.  Let's start with the information that was provided to you.  Tell me what that is.
>
> A.  We were told that employees get paid from a schedule start to a schedule end.

Fernandez Dep. Tr. at 179:24-180:10 (Ex. 5).   Additionally, Dr. Fernandez testified that he did not independently confirm any of the information he provided by defense counsel concerning allowances:

> Q.  And what did you do to verify that these employees were receiving this additional five minutes?
>
> **A.  I did not.**
>
> Q.  You didn't do anything?
>
> A.  I was told they were given five minutes, and that's what I utilized.
>
> Q.  Okay.  Who told you that?
>
> A.  Mario.

20

> Q.  Anyone else?
>
> A.  **It was verified by Brian Brislen and the attorneys.**

*Id*. at 181:25-182:9 (emphasis added).  Moreover, Dr. Fernandez testified that he never evaluated

any payroll records or compensation records to confirm that employees actually received any of

these allowances.  *Id*. at 189:22-25.

Dr. Fernandez relied upon several basic assumptions, provided by Nebraska Beef, in

calculating the various "allowances" he claims Nebraska Beef provided to its employees.  For

example, Dr. Fernandez assumed:

- That employees did not have to be at their work-stations until the meat arrived on the line;

- That employees did not in fact arrive at their work-stations until the meat arrived; and

- That one minute before employee meal and rest breaks were to begin, a light went off to indicate the breaks were about to start, allegedly allowing employees time to doff their PPE before their breaks.

Dr. Fernandez repeatedly confirmed in his deposition that he failed to independently

verify these assumptions, choosing instead to accept the word of Nebraska Beef as absolute truth

when making his conclusions.  *Id*. at 181:25-182:15, 183:22-184:13, 189:1-21, 194:22-195:10,

205:11-17, 206:2-207:23.  For example, Dr. Fernandez never even had a conversation with Tony

Joy, the Fabrication Superintendent, in an attempt to verify the existence of the post-shift

allowance.  *Id*. at 182:16-20 ("Q.  Did you ever have any discussions with Tony Joy about this

case?  A.  I don't know who the gentleman is.  Q.  Never met him?  A.  (Shakes head negatively.)).

Mr. Joy, in fact, testified that the five-minute post-shift allowance is a sham.  Joy Dep. Tr. at

206:23-207:5 (Ex. 3 to Noteware Decl.).

Dr. Fernandez's undisputed testimony makes it clear that he relied solely upon unreliable hearsay statements (as defined by FRE 801) from defense counsel and Defendants' senior management to reach his conclusion that Nebraska Beef provided its line workers with "allowances" for donning and doffing, walking and washing. Dr. Fernandez's conclusions about such allowances have no legitimate basis and are inherently unreliable. There is no other testimony that supports the information about allowances that defense counsel provided to Dr. Fernandez.

Accordingly, Dr. Fernandez should not be permitted to testify concerning or otherwise reference any allowance for donning and doffing activities, walking or washing that Nebraska Beef allegedly provided. Dr. Fernandez did not verify or otherwise ensure that the use of allowances reported by Nebraska Beef and defense counsel actually occurred. Dr. Fernandez's conclusions were based solely on the unreliable and self-serving statements of the Defendants which lack and documentary or other verification. Simply telling an expert witness about a particular fact or defense does not provide that expert witness with a sufficient foundation to testify about that fact or defense. Dr. Fernandez should be barred from referring to allowances at the trial in this matter.

### 15.    Dr. Fernandez's Testimony Concerning His Elemental Analysis Should Be Precluded To The Extent It Fails To Follow Applicable Law

Dr. Fernandez's testimony should also be limited at trial for another reason. The "elemental analysis" that he performed and set forth in his expert report did not properly apply the relevant <u>legal</u> analysis or standard.[3]   In the United States Supreme Court's decision in *IBP, Inc. v. Alvarez*, 546 U.S. 21, 36 (2005), the Court ruled that "during a ***continuous*** workday, any walking time that occurs after the beginning of the employee's first principal activity and before

---

[3] Plaintiffs believe that they have not agreed to postpone challenges to Dr. Fernandez's expert testimony to the extent he did not apply the correct legal standard to his expert opinion.

the end of the employee's last principal activity is. . . covered by the FLSA." (Emphasis added).

Dr. Fernandez ignored the Supreme Court's ruling and failed to include all continuous time

between the employees' first and last principal activities of the day.  He chopped up and

extracted certain actions, arbitrarily assigning them the lofty term "elements", and did not time

the work activities from start to finish as required by the Supreme Court.

Rather than measuring the continuous time between the employees' first and last

principal activities, Dr. Fernandez simply measured the discrete activities that Defendants and

their lawyers **directed** him to measure.  Fernandez Dep. Tr. 61:6-14 (Ex. 5 to Noteware

Decl.).  Specifically, with respect to donning and doffing activities, Dr. Fernandez measured only

the amount of time it took to don and doff the following articles of PPE: hairnet, bump cap, ear

plugs, safety glasses, frock, apron, sleeves, scabbard and steel, plastic arm guard, safety harness,

rain pants, rubber boots.  With respect to cleaning and sanitizing duties, Dr. Fernandez only

measured the amount of time it took employees to wash and sanitize equipment and any time

spent waiting to do so.  *See* Table 3 in Dr. Fernandez's report (Ex. 4 to Noteware Decl.).

The following are examples of work activities that Dr. Fernandez did **not** measure during

his elemental analysis, all of which are performed by the employees throughout their workday:

 removing clothing to don PPE (Fernandez Dep. Tr. at 241:1-5) (Ex 5 to Noteware Decl.);

placing street clothing in the locker after donning PPE (*Id*. at 241:9-14); closing the locker (*Id*. at

241:14-15); picking up PPE on the way to the work-station (*Id*. at 241:16-19); interactions

between employees and supervisors (*Id*. at 241:1-4); employees going to and from the supply

rooms to pick up supplies (*Id*. at 52:4-13; 243:9-14); cleanup activities that occurred at the work-

station (*Id*. at 243:15-17); employees sharpening their knives at the sharpening stations (*Id*. at

243:18-20); employees sharpening their knives anywhere in the facility (*Id.* at 243:21-23); and

the time spent by employees setting up their work-stations (*Id.* at 243:24-25).

Given that Dr. Fernandez failed to follow applicable law, his elemental analysis is

inherently unreliable, missed significant amounts of time, and should not be admitted into

evidence at the trial in this matter.

**16.    Testimony that the Wearing of PPE or the Washing or Sanitization of PPE is Not Required Should Be Precluded**

Employment at Nebraska Beef begins with an orientation program and a safety

orientation.  In both instances, employees are required to sign and accept Nebraska Beef's rules

and requirements before they may begin to work.  Page 4 of the Orientation Program Manual

(Ex. 6 to Noteware Decl.) unequivocally requires compliance with all "plant or departmental

safety rules." (Rules of Conduct No. 17).

Nebraska Beef's Safety Orientation Manual (Ex. 7 to Noteware Decl.) instructs

employees that "each employee's enthusiastic participation in our Health, Safety, and

Environmental programs is considered to be of the utmost importance and a condition of

employment. . . " *Id.* at 1.  Employees are told that they must comply with OSHA standards,

rules and regulations and orders.  Of the "TEN COMMANDMENTS OF SAFETY," No. 4 is:

"WEAR proper clothing and protective equipment."  There is a litany of Nebraska Beef

"SAFETY RULES" (pg. 2) which speak at least nine times to the requirement of wearing PPE

and/or of obeying safety rules served by PPE (Nos. 3-5, 7-8, 11, 14-15, 18).

Under the heading "PERSONAL PROTECTIVE EQUIPMENT," employees are taught

that each job has its own specific "required" equipment and that when they receives it they will

be "required" to sign-off on their understanding that "working safely requires daily inspection of,

and proper fit, of each piece of personal protective equipment."  Employees are then taught that

hardhats and steel-toed boots are also "required" as PPE.  In fact, "Disciplinary Action" follows a "failure to wear required safety equipment."  Such a violation remains on an employee's safety record for a full year.

All of this is dramatically underscored by Tables 2-6 of Ex. A to the Affidavit of Tony Joy, which specifies the PPE Plaintiffs and other class members in this case are "required" to wear in their departments. (Ex. 8 to Noteware Decl.).  Defendants' corporate witnesses thus admitted in the declarations they submitted to this Court in support of their Opposition to Plaintiffs' Motion for Class Certification that Nebraska Beef required line workers to wear PPE.

In addition, sanitation and personal hygiene is not optional at Nebraska Beef.  Nebraska Beef lists sanitation practices that "all employees are expected to observe."  The list is not intended to be all-inclusive.  Among the items on the list is the requirement that equipment such as aprons, knives, hooks, hardhats, gloves and frocks are to be kept reasonably clean during operations and must be completely cleaned at end of shift.  (Item 5, pg. 5 (Ex. 6 to Noteware Decl.)).

Plaintiffs ask this Court to preclude Defendants' witnesses from testifying that PPE is not "required" by Nebraska Beef.  Similarly, Plaintiffs ask the Court to preclude Defendants from testifying that they were not required to clean or sanitize their PPE.

Additionally, testimony concerning the classification of PPE as "required" or "non-unique" by Defendants' fact witnesses is improper lay opinion testimony in violation of FRE 701.  Accordingly, it is improper for Defendants' fact witnesses to testify concerning their conclusions about whether certain PPE should be classified as required or non-unique. Defendants have not submitted an expert report that analyzes or considers whether PPE is required or non-unique.

Documentary evidence produced by Defendants uniformly confirms this testimony. Defendants' corporate witnesses and Defendants' safety and orientation policies state that failure to wear PPE is a "category II (a disciplinary level) safety violation."  Defendants should not be permitted to submit testimony at trial contrary to its admissions concerning PPE throughout the course of discovery.  Such testimony and documentary evidence also should not be permitted pursuant to Rule 37(c)(1) of the Federal Rules of Civil Procedure, which prohibits the untimely disclosure of expert opinion testimony, in the event Defendants try to fill this fatal gap.

For much the same reasons, Plaintiffs ask this Court to preclude the Defendants' witnesses from testifying that Nebraska Beef's line workers were not required to clean or sanitize the PPE they used.  Testimony concerning the classification of the cleaning and sanitizing of PPE as either "required" or "not required" by Defendants' fact witnesses is improper lay opinion testimony in violation of FRE 701.  Accordingly, it is improper for Defendants' fact witnesses to testify concerning their conclusions about whether the cleaning and sanitizing of PPE should be classified as required or not.  Defendants have not submitted an expert report that analyzes or considers whether PPE is required or non-unique.[4]

Furthermore, Defendants should not be permitted to argue or submit evidence at trial that the cleaning or sanitizing of PPE is not required when the testimony of Defendants' corporate witnesses to date establishes just the opposite.  Defendants should not be permitted to submit testimony at trial contrary to its admissions concerning the cleaning and sanitizing of PPE throughout the course of discovery.  Such testimony and documentary evidence should not be permitted pursuant to Rule 37(c)(1) of the Federal Rules of Civil Procedure, which prohibits the untimely disclosure of expert opinion testimony.

---

[4] Defendants' public efforts to present an image of super-cleanliness after their e-coli controversy are completely at odds with Defendants' current claims of laxness with respect to cleanliness.

17.     <u>**References to Number of Opt-Ins Or the Opt-In Process Should Be Excluded**</u>

Defendants may attempt to introduce testimony or argument concerning the way in which the opt-in process proceeded in this case or, in particular, the response rate or number of opt-in respondents.  Such testimony or argument is irrelevant to the claims in this case concerning whether Defendants paid Plaintiffs and other members of the class for all time worked.  Any testimony concerning the opt-in process would be irrelevant under FRE 401 and 402.  Moreover, the risk of prejudice, jury confusion, and waste of judicial resources would be significant. Discussion of the opt-in process would require counsel and the Court to explain complicated legal procedures to jurors.  The issues in this case do not warrant this type of tutorial.  The particular rate of response in this case could be related to a variety of factors.  It would be impossible to adequately explore all of the reasons why the response rate in this case is at its current level.  However, failing to explain the reasons behind the response rate could lead to prejudice to the Plaintiffs if jurors are not made to understand the reasons why certain response rates occur.  Because the probative value of this evidence is arguable at best and the effort necessary to adequately explain it would be significant, evidence and argument concerning the opt-in process and the rate of response in this case should be precluded from the trial under FRE 403.

18.     <u>**Reference to the Circumstances Surrounding Plaintiffs' Attorney-Client Relationship Are Irrelevant and Prejudicial**</u>

Plaintiffs move to exclude any evidence, remarks, suggestions, or statements of counsel concerning the attorney-client relationship between Plaintiffs and their counsel, including how that relationship came into effect or the terms of that relationship.  The retention and scope of a party's representation by counsel has absolutely no relevance to the issues in this case. Moreover, there is a great risk of prejudice to the Plaintiffs if Defendants are permitted to discuss

the way in which Plaintiffs' counsel were retained or the scope of their representation. Such evidence could create a prejudicial impression with certain jurors depending on their biases toward class action cases or plaintiffs' attorneys in general.   Accordingly, such arguments and evidence should be precluded because they are irrelevant under FRE 401.  Furthermore, such arguments run the risk of unfair prejudice and would be a waste of the Court's and the jury's time and are therefore inadmissible under FRE 403.

19.   **References to Objections to Discovery Requests, Claims of Privilege, or Motions To Exclude Evidence From Trial Should Not Be Permitted At Trial**

References to the fact that a party objected to a discovery request, asserted a claim of privilege or sought to exclude evidence from the trial, through a motion *in limine* or otherwise, should not be permitted at trial.  Testimony or argument about or references to the fact that either party made such a request is not relevant to the issues in this case.  Moreover, discussion of any request to exclude or limit evidence creates the risk of confusing the jury and of prejudicing the jury against the party seeking to exclude certain evidence and is therefore inadmissible under FRE 403.

20.   **Defendants Should Not Be Permitted To Speculate About the Substance of the Testimony of Any Witness Who is Absent, Unavailable, or Whom Plaintiffs Did Not Call to Testify**

Plaintiffs request that the Court preclude Defendants from testifying or arguing about or commenting to the jury concerning the substance of the testimony of any witness who did not actually testify.  The potential prejudice from referencing such testimony or commentary vastly outweighs any probative value such comments may provide.  Accordingly, such testimony and commentary should be barred pursuant to FRE 403.

**21.**   **Any Witness That Defendants Refuse to Produce In Plaintiffs' Case In Chief Should Be Precluded From Testifying In Defendants' Case in Chief**

Plaintiffs move to preclude Defendants from calling any witness in its case-in-chief that Defendants refuse to produce in Plaintiffs' case-in-chief.

Plaintiffs anticipate that Defendants will attempt to preclude Plaintiffs from calling witnesses in its case in chief that Defendants will attempt to produce in their own case in chief. However, Defendants may not prevent Plaintiffs from calling certain individuals as adverse witnesses and later produce those individuals in its own case in chief.

This Court may, in its discretion, exclude evidence if its probative value is substantially outweighed by the danger that it will prejudice a party.  FRE Rule 403.  Because allowing Defendants to call witnesses that Defendants refuse to produce in Plaintiffs' case in chief would only serve to prejudice Plaintiffs, confuse the issues and mislead the jury, this Court must preclude Defendant from calling any such witness in its case-in-chief.

**22.**   **To Preclude Plaintiffs' Attorneys From Testifying**

Plaintiffs move to preclude Plaintiffs' attorneys from testifying.  Requiring Plaintiffs' counsel to testify would violate the attorney-client privilege.  Furthermore, Plaintiffs' counsel will stipulate to the authenticity of any correspondence sent by Schneider Wallace Cottrell Brayton Konecky LLP and/or Berger & Montague, P.C. to Defendants, thus removing any conceivable need for Plaintiffs' counsel's testimony.

This Court may, in its discretion, exclude evidence if its probative value is substantially outweighed by the danger that it will prejudice a party.  FRE Rule 403.  Because requiring any of Plaintiffs' attorneys to testify would only serve to prejudice Plaintiffs, confuse the issues and mislead the jury, this Court must order Defendants to refrain from requiring such testimony.

**23.** **To Exclude All Witnesses From The Courtroom At All times Other Than When They Are Called To Testify**

Plaintiff moves to exclude all witnesses from the courtroom at all times other than when they are called to testify.

Under Federal Rule of Evidence 615, at the request of any party or by its own motion, the court shall order witnesses excluded from the courtroom so that they cannot hear the testimony of other witnesses. This exclusion does not apply to:

(a)     a party who is a natural person

(b)     an officer or employee of a party which is not a natural person designated as its representative by its attorney

(c)     a person whose presence is shown by a party to be essential to the presentation of the party's cause; or

(d)     a person authorized by statute to be present.

FRE Rule 615.

The sequestration of witnesses who are not presently testifying will promote fair play and substantial justice, because each witness' testimony will be based only on his or her personal knowledge of the evidence, and not on the credibility, or lack of credibility, of other witnesses, which is a determination to be made by the trier of fact and this Court. Therefore, the Court should exclude all witnesses from the courtroom at all times except when they are called to testify.

**24.** **Documents or Witnesses Not Disclosed During Discovery Should Be Precluded**

Federal Rule of Civil Procedure 26(a)(3) requires a party to disclose the identity of any witness it expects to testify at trial. Rule 26(e) requires a party to supplement disclosures or discovery responses in a timely manner if the party learns that the disclosures or responses are incomplete or incorrect in some material respect and the corrective information has not otherwise

been made known to the other party during the discovery process or in writing.  Rule 37(c)

provides that if a party fails to provide information or the identity of a witness as required by

Rule 26, the party is not allowed to use that information or witness to supply evidence on a

motion, at a hearing, or at trial unless the nondisclosing party shows that the failure is

substantially justified or is harmless.  To the extent that Defendants have failed to identify any

witness or document as required by the Federal Rules of Civil Procedure, Plaintiffs request that

such document or witness be barred from evidence in the trial of this matter.

**25.**     <u>**References to Attorneys' Fees or Cost of Litigation Are Irrelevant and Prejudicial**</u>

Plaintiffs move to exclude any evidence, remarks, suggestions, or statements of counsel

concerning the fact or amount of attorneys' fees or the costs of litigation.  The facts concerning

how a party's attorneys will be paid have no relevance to the issues in this case.  There is a risk

of prejudice to the Plaintiffs if Defendants are permitted to mention the way in which either set

of counsel will be compensated in this case.  Such evidence could create a prejudicial impression

with certain jurors depending on their biases toward class action cases or attorneys' fees in

general.   Accordingly, such arguments and evidence should be precluded because they are

irrelevant under FRE 401.  Furthermore, introduction of this evidence would create the risk of

unfair prejudice and would be a waste of the Court's and the jury's and is therefore inadmissible

under FRE 403.

**26.**     <u>**Evidence Concerning Settlement Discussions Is Inadmissible**</u>

Rule 408 of the Federal Rules of Evidence precludes the admission of statements made in

settlement negotiations.  Accordingly, Plaintiffs move to exclude any discussion of the fact or

content of any settlement negotiations between the parties in this case, including any particular

offers of settlement or compromise.  Such evidence is also inadmissible because it is irrelevant to

the disputed issues in the case under FRE 401 and 402, and runs the risk of jury confusion and waste of judicial resources under FRE 403.

**27.**   **Plaintiffs' Counsel's Involvement In Other Litigation**

Finally, Defendants should be precluded from arguing to the jury or asking Plaintiffs or other witnesses about their knowledge concerning Plaintiffs' counsel's involvement in other cases or litigation.  The participation of any party's counsel in other cases has no relevance to the issues in this case.  There is a risk of prejudice to the Plaintiffs if Defendants are permitted to mention counsel's involvement in other litigation.  Such evidence could create prejudice in the jury based on a possible anti-litigation, or anti-class action litigation sentiment or bias.  Accordingly, such arguments and evidence should be precluded because they are irrelevant under FRE 401.  Furthermore, introduction of this evidence would create the risk of unfair prejudice and would be a waste of the Court's and the jury's and is therefore inadmissible under FRE 403.

For the foregoing reasons, this motion should be granted.

Dated: May 14, 2010                       Respectfully submitted,


                                        /s/ Ellen T. Noteware
                                    Shanon J. Carson (admitted *pro hac vice*)
                                    Russell D. Henkin (admitted *pro hac vice*)
                                    Ellen T. Noteware (admitted *pro hac vice*)
                                    BERGER & MONTAGUE, P.C.
                                    1622 Locust Street
                                    Philadelphia, Pennsylvania 19103
                                    Tel: (215) 875-4656
                                    Fax: (215) 875-4604
                                    scarson@bm.net

                                    Todd M. Schneider (admitted *pro hac vice*)
                                    Carolyn H. Cottrell (admitted *pro hac vice*)
                                    SCHNEIDER WALLACE COTTRELL

BRAYTON KONECKY LLP
180 Montgomery Street, Suite 2000
San Francisco, California 94104
Tel: (415) 421-7100
Fax: (415) 421-7105
wwillson@schneiderwallace.com

Philip A. Downey (admitted *pro hac vice*)
P.O. Box 736
Unionville, Pennsylvania 19375
Tel: (610) 324-2848
Fax: (610) 347-1073
downeyjustice@gmail.com

Christopher P. Welsh (State Bar No. 22279)
WELSH & WELSH, P.C., L.L.O.
2027 Dodge Street, Suite 400
Omaha, Nebraska 68102
Tel: (402) 384-8160
Fax: (402) 384-8211
cwelsh@welsh-law.com

Attorneys for Plaintiffs and the Class

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **FERMIN CORTEZ**, *et al.*, | ) | **8:08CV90** |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **DAVID CHUOL**, *et al.*, | ) | **8:08CV99** |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **NEBRASKA BEEF, LTD. and** | ) | |
| **NEBRASKA BEEF, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 14, 2010, I served true and correct copies of:

- Plaintiffs' Omnibus Motion in Limine
- Index of Evidence in Support of Plaintiffs' Omnibus Motion in Limine

via CM/ECF system, upon the following:

William M. Lamson, Jr. (wml@ldmlaw.com)
William R. Settles (wrs@ldmlaw.com)
Brian J. Brislen (bjb@ldmlaw.com)
LAMSON, DUGAN and MURRAY, LLP
10306 Regency Parkway Drive
Omaha, NE 68114-3743

s/ Ellen Noteware
Ellen Noteware *(pro hac vice)*
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103
Tel: (215) 875-3000
Fax: (215) 875-4604

1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

### CERTIFICATE OF SERVICE

I hereby certify that on May 14, 2010, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system, which will send notification of such filing to the

following:

Brian J. Brislen                 bbrislen@ldmlaw.com, rebeccal@ldmlaw.com

Shanon J. Carson                scarson@bm.net

Carolyn H. Cottrell             ccottrell@schneiderwallace.com, efilings@schneiderwallace.com, kkadatoni@schneiderwallace.com

Philip A. Downey                downeyjustice@gmail.com

Michael Hamilton                mhamilton@provostumphrey.com
lheembrock@provostumphrey.com

Russell D. Henkin               rhenkin@bm.net

William M. Lamson, Jr          wlamson@ldmlaw.com, amyk@ldmlaw.com

Brian P. McCafferty             cafstar@aol.com

Todd M. Schneider              tschneider@schneiderwallace.com
efilings@schneiderwallace.com

William R. Settles               wrs@ldmlaw.com, jray@ldmlaw.com

Christopher P. Welsh            cwelsh@welsh-law.com

James R. Welsh                 jwelsh@welsh-law.com

Hank Willson                  wwillson@schneiderwallace.com, efilings@schneiderwallace.com

                                         <u>s/ Ellen Noteware</u>
                                         Ellen Noteware *(pro hac vice)*
                                         Berger & Montague, P.C.
                                         1622 Locust Street
                                         Philadelphia, PA 19103
                                         Tel: (215) 875-3000
                                         Fax: (215) 875-4604