IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **FERMIN CORTEZ,** *et al.*, | ) | 8:08CV90 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **DAVID CHUOL,** *et al.*, | ) | 8:08CV99 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| **NEBRASKA BEEF, LTD. and** | ) | |
| **NEBRASKA BEEF, INC.,** | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE***

Defendants have identified 21 subjects that they wish to exclude from the upcoming trial in this matter scheduled to begin on September 7, 2010.  [Dkt. No. 329].  Plaintiffs' response to each subject is respectfully set forth below.  Plaintiffs' agreement not to object to certain subjects is without prejudice to their right to reopen argument if Defendants "open the door" by placing information relevant to these subject-matter areas into evidence, thereby making them relevant or otherwise raising these issues.

## ARGUMENT

**MIL No. 1:  Reference to the events surrounding the investigation of Nebraska Beef that was instituted by the former INS in or around 2000 and to prohibit reference or mention of "employee immigration status, "immigration investigations" or similar characterizations.**

Plaintiffs do not object, provided that no party should be permitted to introduce at trial any reference to employee immigration status.  In fact, on May 14, 2010, Plaintiffs filed a motion

*in limine* to preclude reference at trial to any "[e]vidence concerning the citizenship or immigration status of Plaintiffs or other class members." [Dkt. No. 331]. This includes inquiries concerning when a witness "moved to this country" or other similar questions.

> **MIL No. 2: Reference to any other lawsuit, in any jurisdiction, to which Nebraska Beef was, or is, a party including any litigation between Nebraska Beef and the USDA or its employees.**

Plaintiffs do not object and this should be applicable to all parties.

> **MIL No. 3: Reference to any recall of products initiated by Nebraska Beef.**

Plaintiffs contend that the personal protective equipment and related items ("PPE") at issue in this case are integral and indispensable to the meat processing work performed by Plaintiffs and the Class. Plaintiffs do not believe that Defendants seriously contest this. A major reason for PPE to be worn is to prevent cross-contamination within the meat processing environment, both to protect the workers and to protect the product and ultimately the consumer. This is reflected in Defendants' own documents and records, as well as federal regulations.[1]

---

[1] Defendants and their witnesses freely *admit* that all production and support workers wear PPE, including, among other things, knife pouches, smocks, cloth aprons, rubber aprons, mesh aprons, mesh gloves, boots, hard hats, ear plugs, harnesses, and "brain pants." *See, e.g.*, Villareal Depo. I 51:11-52:24 (knife pouch, smocks), 52:15-53:6 (rubber apron), 81:2-22 (rubber apron), 88:24-90:7 (cloth apron, mesh apron, mesh gloves, boots); Villareal Depo. II at 60:7-61:5 (hard hat, boots, mesh apron, ear plugs, Kevlar glove, harness, "brain pants," vinyl apron, knife pouch/scabbard); Joy Depo. at 22:17-23:5 (authenticating document identifying departments at Nebraska Beef), 91:5-17 ("All of those departments wear some sort of PPE."); Villareal Depo. II at 61:12-15 ("every slaughter employee at Nebraska Beef wears some sort of PPE"), 159:19-160:1 (authenticating affidavit of Mario Villareal); 160:24-161:21 (listing the categories of PPE worn by slaughter employees); McElroy Depo. at 117:17-20 (everybody that works on the slaughter floor and fabrication wears some level of PPE"); Martinez Depo. at 43:2:44:23, 50:8-12 ("basic equipment" is "[b]oots, helmet, hair net, earplugs, rubber gloves, and an apron. If they go to fab, then they take a frock."), 132:16-24 (authenticating Orientation and Safety Training Sheet), 154:18-155:19 ("yellow apron, boots, gloves, hair net, earplugs…all production line employees have to wear these"), 158:4-11 ("People that work in those different departments that are off the main line, they have to wear basic PPE as well…And they also wear some additional safety equipment depending on the department"), 161:14-163:5 (basic PPE for shipping and packaging employees), 169:25-170:10 (fabrication employees wear, in addition to basic PPE: "mesh glove, mesh apron, boots, Kevlar glove, hair net, earplugs, helmet, cotton gloves on the outside of the, the safety gloves."), 272:3-20 ("all of the production line employees at Nebraska Beef are required to wear earplugs"); "Nebraska Beef Ltd. Safety Orientation," D000052-55 ("hard hats," "eye and face protection," "Steel toed Boots," "personal protective equipment that is designated for the specific job that you are performing," "fall protection harness where required by the fall protection program," and "Hearing protection"), D000056 ("each job has it's [sic] on [sic] specific required equipment").

For these reasons, if Defendants stipulate that the PPE worn by its hourly production and support employees is integral and indispensable to their job, including for the purpose of preventing cross-contamination from occurring, then Plaintiffs would have no objection to this proposed motion *in limine*. If, however, Defendants do not so stipulate, then Plaintiffs should be permitted to establish this *prima facie* element of their Fair Labor Standards Act ("FLSA") claim, including by questioning witnesses as to the reason why PPE is worn. The issue of cross-contamination and food safety (including recalls) – especially at Defendants' plant at issue in this litigation, establishing Defendants' notice and knowledge of this issue – is directly relevant to one of the primary reasons why PPE is worn in the first place. The fear of a product recall is a direct reason for a participant in the meat-packing industry to require its hourly workers to wear PPE. This supports that the PPE at issue is integral and indispensable for purposes of the FLSA.

**MIL No. 4: To preclude Plaintiffs from calling more than 20 fact witnesses to testify at trial.**

This is not a proper motion *in limine*, but rather, is a trial management issue that should have been raised, and was not raised by Defendants, at the pretrial conference held by the Court on May 27, 2010. Not only did Defendants waive this argument by failing to raise it at the pretrial conference (during which the Court carefully reviewed each sides' proposed "will call" and "may call" witnesses), this motion is also improper because it improperly intrudes on Plaintiffs' discretion as to how they will present their case to the Court and jury.

In addition, Defendants' proposed number of 20 fact witnesses is an artificially low ceiling and, in any event, is unnecessary. Plaintiffs will not prolong this matter by calling non-essential fact witnesses at trial. Plaintiffs have repeatedly argued that a trial of this matter will take two weeks or less, and the Court has scheduled a two-week trial. Thus, the number of witnesses that Plaintiffs will call will necessarily be limited by their intention to present their

case in chief within one trial week.  At the same time, Plaintiffs must be permitted to present truly representative evidence across the relevant departments at Defendants' facility and across the relevant time period so that a jury can make findings on behalf of the certified classes in this litigation.

For these reasons, setting a limit of 20 fact witnesses is entirely unnecessary and unduly restrictive.  If Defendants believe that evidence at trial is repetitive or cumulative, they can address this at the appropriate time with the trial judge.  The current motion should be denied.[2]

**MIL No. 5:  Reference to undisclosed expert opinions.**

Plaintiffs do not object and this should be applicable to all parties.

**MIL No. 6:  Reference to "collective bargaining," "union" or similar status of employees at Nebraska Beef.**

Plaintiffs do not object and this should be applicable to all parties.

**MIL No. 7:  Reference to Defendants' "moral" or "ethical" obligations.**

Defendants request that this Court exclude at trial any reference to whether Defendants have a "moral" or "ethical" obligation to comply with federal and state statutes, pay their workers adequately, and honor their agreements and contracts.  Excluding these words from the lexicon of the trial is unnecessary and improper.  The utterance of these words would not be unduly prejudicial to Defendants or create confusion for the jury.

In addition, in order to obtain a three year statute of limitations with respect to their FLSA claim, Plaintiffs are required to prove that Defendants acted willfully or in reckless disregard for their obligations under the law.  Whether Defendants breached their contracts or were unjustly enriched by Plaintiffs' labor also implicates moral or ethical obligations.  For these

---

[2] Alternatively, should the Court be inclined to limit the number of fact witnesses that Plaintiffs may call at trial, then the jury must be instructed that the Court limited the number of witnesses because of the limited time allotted for trial, and Defendants cannot be permitted to raise this issue at trial.

reasons, Plaintiffs are perfectly and legally entitled under the Federal Rules of Evidence to argue that Defendants knew of and avoided their legal obligations, and chose not to honor them in a way that exhibited ethical corporate conduct.  Further, the willful or reckless violation of federal and state remedial minimum wage and overtime statutes does not model ethical conduct.  Wage theft is wage theft, and Plaintiffs and the Class are entitled to argue this to the jury.  Defendants are free to present their position in defense.

### MIL No. 8:  Reference to Defendants' Agreement Permitting Visitor Access.

Defendants' brief illustrates that this part of their motion actually concerns the fact that Plaintiffs' time-study expert was required to sign a release of claims in order to obtain access to visit the plant and conduct his time study.  The release states, in pertinent part:

> VISITORS also hereby agree to release and hold harmless NEBRASKA BEEF from any and all loss, damage or injury to the undersigned VISITORS' property or person, including death, caused by or resulting from, or alleged to have been caused by or resulted from, the condition of NEBRASKA BEEF premises, including any machinery and equipment thereon, and/or the actions or failure to act of NEBRASKA BEEF agents or employees; and this release shall be effective whether or not such loss, damage or injury is caused by or alleged to have been caused by the negligence of NEBRASKA BEEF, its agents or employees.

While Plaintiffs believe that, contrary to Defendants' argument, such a release does tend to show that Defendants' plant is a dangerous operating environment, Plaintiffs do not object to this part of Defendants' motion.

### MIL No. 9:  Reference to Defendants' policy regarding the FMLA.

Plaintiffs do not object to this part of Defendants' motion.

### MIL Nos. 10-12: Reference to Defendants' HACCP Plans and SSOP Program.

Defendants' Hazard Analysis Critical Control Point (HAACP) Plan and Sanitation Standard Operating Procedure (SSOP) Program are centrally relevant to the issues in this case.  Notwithstanding this fact, Defendants seek to exclude references to these highly significant

documents on the grounds that they are irrelevant and proprietary. The Court should reject Defendants' effort to exclude this relevant evidence.

Specifically, a primary issue in this case, *inter alia*, is whether PPE was required, necessary, or used for the benefit of Defendants. Also at issue is how long it took Plaintiffs and the Class to don, doff and sanitize their PPE at various points in the day. Information contained in the HAACP Plan and SSOP Program directly bear on the analysis of these issues. There are references in these plans that refute the contention that the PPE and other items at issue were not required by Defendants.

Further, with regard to the alleged confidential nature of the HAACP Plan and SSOP Program, the ways in which these documents are expected to be used at trial would not implicate any proprietary or trade secret concerns. A blanket prohibition on this highly relevant evidence is not required to protect Defendants' interests. Any particular confidentiality issues that arise can be handled on an *ad hoc* basis at trial, should the need arise. For these reasons, the Court should deny Defendants' request to exclude the centrally relevant evidence contained in Defendants' HAACP Plan and SSOP Program.

**MIL No. 13:  Reference to any status report from Rust Consulting.**

Plaintiffs do not object and this should be applicable to all parties. Specifically, Defendants should be precluded from making any reference to the number of individuals who filed opt-in forms with respect to the FLSA claim, and the number of individuals who did not.

**MIL No. 14: Reference to Plaintiffs' Declarations.**

Defendants object to "any mention" of the declarations Plaintiffs submitted in this case on the grounds that they are hearsay. Plaintiffs object to a blanket exclusion of these declarations at trial. Plaintiffs can anticipate situations at trial where the information contained

in the declarations could be used to examine, refresh recollection, impeach or rehabilitate a live witness, that would not be barred by the hearsay rule. Plaintiffs agree that the declarations cannot be offered at trial in lieu of a live witness. Accordingly, the Court should not prohibit the use of the declarations submitted by Plaintiffs in this case in connection with obtaining testimony from a live witness.

### MIL Nos. 15-16:  Reference to Defendants' Corporate Disclosures and Complaints.

Defendants seek to exclude reference to the Disclosure of Corporate Affiliations, Financial Interest, and Business Citizenship for Nebraska Beef, Ltd. and Nebraska Beef, Inc., as well as the Complaints or Amended Complaints in this matter, on the grounds that they are irrelevant. Like the declarations mentioned above, it is possible that these documents could be used to examine, refresh recollection, impeach or rehabilitate a live witness testifying at trial, and these documents should not be excluded for this purpose.

### MIL No. 17-18:  Reference to Opt-In forms, Consent Forms, Claim Forms, and the Notice of Class Action and Collective Action.

Plaintiffs do not object and this should be applicable to all parties. Similarly, any reference to individuals who opt-out of the Rule 23 class action claims should similarly be excluded for the same reasons as are stated in Defendants' motion and memorandum of law.

### MIL No. 19:  Reference to the jobs performed at Nebraska Beef as "Grueling," "Dirty," "Dangerous," "Low-Paying" or other similar characterizations.

These descriptions of the production line jobs at Nebraska Beef are simply facts of life for hourly workers in the meat-processing industry, and Defendants may just as well assert that Plaintiffs not be permitted to reference time-keeping or compensation at trial, either. Defendants' request that this Court bar the use of the words "grueling," "dirty," "dangerous," and "low-paying" when describing the work performed by Plaintiffs and the Class is specious.

Moreover, such a restriction is unnecessary and not permitted under the Federal Rules of Evidence. The questions of whether the work that Plaintiffs and the Class perform is dirty, dangerous, and low-paying are all centrally relevant to this case. For instance, Defendants may argue at trial that certain PPE is not necessary, when, in fact, it is. Showing that the work environment was dangerous, dirty and grueling would refute this contention and the impression Defendants may hope to raise.

Further, there is nothing prejudicial -- and certainly not unduly prejudicial -- in the words dirty, dangerous, grueling or low-paying that requires their exclusion at trial, and Defendants cite no case law to support their argument. These concepts are all highly relevant to this case and these words will not create undue prejudice to Defendants or create confusion for the jury. This part of Defendants' motion should be denied.

### MIL No. 20: Reference to other donning and doffing lawsuits or evidence of settlements involving other meat processing companies.

Defendants argue that this information is irrelevant. In fact, this evidence is directly relevant to the issue of Defendants' notice and knowledge of their obligations under the FLSA and related state law fair wage statutes, as well as the issues of willfulness and Defendants' alleged good faith defense. Just as one example, in 2005, the United States Supreme Court issued its unanimous decision in the case of *IBP v. Alvarez*, holding that walking time after the continuous work day's first primary work activity is compensable, as is time spent waiting in line. *IBP v. Alvarez*, 546 U.S. 21, 36-40 (2005). In *Alvarez*, the Supreme Court also reaffirmed the United States Department of Labor's longstanding "continuous workday" rule, requiring employers to pay employees from the first compensable act of the work day, such as obtaining a piece of PPE, until the last compensable act, such as the doffing and cleaning of PPE.

*Alvarez* and similar landmark donning and doffing decisions, as well as Department of Labor guidance to the industry on this topic, were widely disseminated and discussed in the meat-packing industry. Defendants' notice of and knowledge of these decisions and related information (or lack of knowledge) is directly relevant to the issue of whether they acted willfully or recklessly in violating the FLSA and related state-law statutes at issue in this case. This is extremely relevant evidence, which is important to Plaintiffs' ability to prove their *prima facie* case. Defendants' motion concerning this evidence should be denied.

### MIL No. 21:  Reference to Defendants' revenues, net worth or similar evidence.

Finally, Defendants ask this Court to exclude mention of either the revenue or net worth. Defendants argue that their revenue and net worth are irrelevant to this action, but this is not true. As Defendants correctly recognize, Plaintiffs have asserted a claim for unjust enrichment, and thus, Defendants' earnings and other financial barometers are centrally relevant to that cause of action, which focuses on whether Defendants received undue financial benefit from its practice of underpaying Plaintiffs and the Class for their work. The elements of Plaintiffs' unjust enrichment claim include: 1) Defendants received a benefit from Plaintiffs' labor; 2) retained possession of that benefit; and 3) in justice and fairness, ought to pay the benefit it received to Plaintiffs, because it would be unjust for Defendants to retain the benefit. *Clif-Tex Land and Livestock, Inc. v. First Dakota Nat. Bank, N.A.*, 2008 WL 2930203 (Neb. App. July 29, 2008). Therefore, the value of the benefit that Defendants received and retained is directly relevant to this claim.

The relevance of Defendants' financial condition is not limited to Plaintiffs' unjust enrichment claim. This information is also relevant to the damages portion of the other state and federal claims asserted by Plaintiffs, individually and on behalf of the Class.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Defendants' motions *in limine*, except as noted above. For the Court's convenience, Plaintiffs are providing the Court with a proposed order.

Dated: June 3, 2010                    Respectfully submitted,

 s/ Shanon J. Carson
Shanon J. Carson (admitted *pro hac vice*)
Russell D. Henkin (admitted *pro hac vice*)
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, Pennsylvania 19103
Tel: (215) 875-4656
Fax: (215) 875-4604
scarson@bm.net

Todd M. Schneider (admitted *pro hac vice*)
Carolyn H. Cottrell (admitted *pro hac vice*)
SCHNEIDER WALLACE COTTRELL BRAYTON KONECKY LLP
180 Montgomery Street, Suite 2000
San Francisco, California 94104
Tel: (415) 421-7100
Fax: (415) 421-7105
ccottrell@schneiderwallace.com

Philip A. Downey (admitted *pro hac vice*)
P.O. Box 736
Unionville, Pennsylvania 19375
Tel: (610) 324-2848
Fax: (610) 347-1073
downeyjustice@gmail.com

Christopher P. Welsh (State Bar No. 22279)
WELSH & WELSH, P.C., L.L.O.
2027 Dodge Street, Suite 400
Omaha, Nebraska 68102
Tel: (402) 384-8160
Fax: (402) 384-8211
cwelsh@welsh-law.com

Attorneys for Plaintiffs and the Class

## CERTIFICATE OF SERVICE

    I, Shanon J. Carson, hereby certify that a true and correct copy of the foregoing papers have been served on the below counsel of record for Defendants, Nebraska Beef, Ltd. and Nebraska Beef, Inc., in accordance with the Rules of Civil Procedure via the Court's electronic filing CM/ECF system on June 3, 2010.

> William M. Lamson, Jr., #12374
> William R. Settles, #19879
> Brian J. Brislen, #22226
> LAMSON, DUGAN and MURRAY, LLP
> 10306 Regency Parkway Drive
> Omaha, NE 68114-3743
> Telephone: (402) 397-7300
> Telefax: (402) 397-7824
> wml@ldmlaw.com
> wrs@ldmlaw.com
> bjb@ldmlaw.com
>
> *ATTORNEYS FOR DEFENDANTS*

Dated: June 3, 2010                      s/ Shanon J. Carson