UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA

| | |
|---|---|
| FERMIN CORTEZ, *et al.*, | Case No. 8:08-cv-00090 |
| and | |
| DAVID CHUOL, *et al.*, on behalf of themselves and all others similarly situated, | Case No. 8:08-cv-00099 |
| Plaintiffs, | **PLAINTIFFS' MOTION *IN LIMINE* TO PRECLUDE DEFENDANTS FROM ARGUING THAT NEBRASKA BEEF IS ENTITLED TO AN OFFSET** |
| vs. | |
| NEBRASKA BEEF, LTD. and NEBRASKA BEEF, INC. | |
| Defendants. | |

Plaintiffs Fermin Cortez and David Chuol, individually and on behalf of the Class, through their counsel of record, respectfully submit this Motion *in Limine* to Preclude Defendants From Arguing That Nebraska Beef is Entitled to an Offset.

**I.      INTRODUCTION**

Plaintiffs move the Court to preclude Defendants' witnesses and defense counsel from testifying, referencing, mentioning in testimony, questions or comments, submitting documentary evidence regarding or otherwise arguing that Defendants are entitled to an "offset" for any alleged "allowances" of time Defendants' expert, Dr. Jeffrey Fernandez, claims were given to Nebraska Beef employees.  Plaintiffs have already requested that Defendants be precluded from offering evidence regarding these "allowances," which, according to Dr. Fernandez, are essentially periods of "free" time during a shift that Class members could use to don, doff, walk or wash.  Plaintiffs now ask this Court to further preclude Defendants from arguing that they are entitled to any "offsets" based on the

1

alleged existence of these allowances. The FLSA and the continuous workday doctrine prohibit such "offsets" and, as such, Defendants should be precluded from arguing to the jury that an "offset" would be appropriate.

## II.     TESTIMONY AT ISSUE

In their Omnibus Motion *In Limine* (Dkt. No. 331), Plaintiffs seek to preclude references to or arguments regarding any alleged "allowances" of time that Dr. Fernandez claims were given to Nebraska Beef employees to don, doff, walk or wash. Dr. Fernandez's conclusions regarding the existence of these "allowances" should be excluded because they are based on information that would not be reasonably relied upon by experts in Dr. Fernandez's field.

Specifically, Dr. Fernandez testified that Nebraska Beef provided its employees with six identifiable "allowances" of time, during which they could perform certain activities, such as donning, doffing, washing and walking.[1] The "pre-shift allowance" is the time between an employee's scheduled start time and the time when the first piece of meat reaches the first employee on the line. The "pre-shift dwell allowance" is the time between when the first piece of meat reaches the first employee on the line and when the first piece of meat reaches the last employee on the line. The "post-shift allowance" is time provided to the employee to doff and walk. The "post-shift dwell allowance" is the time between when the last piece of meat reaches the first employee on the line and when the same piece of meat reaches the last employee on the line. The "break allowance" is break time that Defendants provide to employees beyond 30 minutes. The "stacking allowance" is the time between when carcasses are stacked between the first knock and

---

[1] Plaintiffs dispute the Dr. Fernandez's methodology and conclusions on a number of levels, including the existence of these alleged "allowances."

the sticker, which Dr. Fernandez claims provides certain employees with additional time at pre-shift and post lunch break.

Dr. Fernandez admits that his knowledge and conclusions regarding these "allowances" is based purely on information provided to him by Nebraska Beef and its attorneys, rather than from any independent observation or confirmation. As such, the information constitutes inadmissible "double hearsay." Dr. Fernandez based some of his expert opinion on statements from defense counsel regarding topics about which counsel had no first-hand knowledge. Dr. Fernandez then simply accepted the hearsay provided by defense counsel, rather than performing any testing or analysis of his own in order to gain first-hand knowledge regarding the existence of these alleged "allowances."

Experts may base their conclusions on otherwise inadmissible evidence, but only to the extent that such evidence is "a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." *See* Fed.R.Evid. 703. Here, the "evidence" that Dr. Fernandez relied upon would not be "reasonably relied upon" by other experts. Defendants' own witnesses have provided extensive deposition testimony to the contrary, in some cases even before Dr. Fernandez offered his expert opinion that these "allowances" exist. *See, e.g.*, See, e.g., Deposition of Lisa Cleary at 185:9-186:7, 186:10-187:3, 187:12-190:19, 199:10-200:14; Deposition of Jennifer McElroy at 71:24-73:25; 97:13-98:14; Deposition of Tony Joy at 40:25-41:20, 59:21-60:13, 63:16-64:6, 120:2-7, 124:2-125:23; Deposition of Mario Villareal at 19:20-20:25, 27:13-28:11, 36:2-15, 47:24-48:8, 48:24-49:6, 50:3-8. Given this testimony, it was not reasonable for Dr. Fernandez to rely upon contradictory information provided by Nebraska Beef and/or its counsel. As such, Plaintiffs argue that any reference to these "allowances" should be excluded.

Plaintiffs expect Defendants and their counsel to characterize these "allowances" as extra time Plaintiffs and members of the Class could have used to perform activities, such as donning, doffing, washing, sanitizing and walking, that should offset the damages owed to Plaintiffs and other Class members for unpaid overtime compensation. In the event that the Court determines that the jury should hear evidence regarding these alleged "allowances," Plaintiffs respectfully request that Defendants be precluded from arguing that these time periods, which occur during paid time, should be "offset" against, or reduce, the damages for uncompensated time (between the employees' first and last principal activities) sought by Plaintiffs in this matter. Allowing Defendants to make such an argument would circumvent the goals of the FLSA and the "continuous workday" principle.

### III.    OFFSETS OF THIS TYPE ARE NOT PERMISSIBLE UNDER THE FLSA

Offsets of the type Plaintiffs seek to preclude Defendants from claiming are impermissible under the Fair Labor Standards Act (FLSA), 29 U.S.C. 201 *et seq*. Section 7(h) of the FLSA, 29 U.S.C. 207(h) (2009), sets forth the circumstances under which an employer may receive "credit" for various payments toward overtime compensation required under section 7 of the FLSA. Specifically, section 7(h), which is titled "Extra compensation creditable toward overtime compensation," states:

> (1) Except as provided in paragraph (2), sums excluded from the regular rate pursuant to subsection (e) shall not be creditable toward wages required under section 6 or overtime compensation required under this section.
>
> (2) Extra compensation paid as described in paragraphs (5), (6), and (7) of subsection (e) of this section shall be creditable toward overtime compensation payable pursuant to this section.

29 U.S.C. 207(h) (2009).

Section 7(h)(1), 29 U.S.C. 207(h)(1), was added to the FLSA in 2000 by the Worker Economic Opportunity Act, P.L. No. 106-202, 114 Stat 308 (May 18, 2000). Prior to the passage of that Act, section 7(h) of the FLSA simply stated:

> Extra compensation paid as described in paragraphs (5), (6), and (7) of subsection (e) of this section shall be creditable toward overtime compensation payable pursuant to this section.

29 U.S.C. 207(h) (1999). The addition of section 7(h)(1) in 2000 made clear that sums excluded from the regular rate under section 7(e), with the exception of 7(e)(5)-(7) payments, shall not be creditable toward overtime compensation required by the FLSA. *See Bell v. Iowa Turkey Growers Co-op*, 407 F. Supp. 2d 1051, 1062-1063 (S.D. Iowa 2006) ("Section 207(h)(1) makes clear that the only payments that are creditable towards overtime compensation are the types of payments listed in § 207(e)(5)-(7)."). Thus, under the plain language of the FLSA, the only payments that may be credited toward overtime due are premium payments under section 7(e)(5)-(7). *See* 29 U.S.C. 207(h)(2); *see also Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 914 & n.19 (9th Cir. 2004).[2] The Ninth Circuit in *Ballaris* explained the rationale for this limitation on "offsets" under the FLSA:

> Crediting money already due an employee for some other reason against the wage he is owed is not paying that employee the compensation to which he is entitled by statute. It is, instead, false and deceptive "creative" bookkeeping that, if tolerated, would frustrate the goals and purposes of the FLSA.

If this Court were to allow Defendants to argue that they were entitled to an offset based on Dr. Fernandez's alleged "allowances," Defendants would effectively have

---

[2] Payments under FLSA sections 7(e)(5)-(7), which are creditable against an employer's overtime obligations under the Act, include various types of premium rate pay, which is compensation at a rate in excess of the regular hourly rate paid for work performed outside of or in excess of regular working hours or in excess of eight hours per day or the applicable maximum work week or on weekends or holidays. In contrast, sections 7(e)(1)-(4) and 7(e)(8) describe various types of payments that are not premium rate payments.

permission to engage in the "creative booking" that the *Ballaris* Court explicitly found to "frustrate the goals and purposes of the FLSA."

### IV.   ALLOWING DEFENDANTS TO CLAIM THEY ARE ENTITLED TO AN OFFSET WOULD VIOLATE THE CONTINUOUS WORKDAY PRINCIPLE

Under the "continuous workday" principle, an employee must be paid for <u>all</u> time during the continuous workday, specifically "'the period between the commencement and completion on the same workday of an employee's principal activity or activities.'"  *IBP, Inc. v. Alvarez*, 546 U.S. 21, 29 (2005) (quoting 29 C.F.R. 790.6(b)).  In other words, employees must be paid from the time that they perform their first principal activity to the time they complete their last principal activity of the day.  The Supreme Court applied this rule broadly, holding, for example, that "during a continuous workday, any walking time that occurs after the beginning of the employee's first principal activity and before the end of the employee's last principal activity is excluded from the scope of that provision, and as a result is covered by the FLSA." *Id*. at 37.

Similarly, the Court stated that "[b]ecause doffing gear that is 'integral and indispensable' to employees' work is a 'principal activity' under the statute, the continuous workday rule mandates that time spent waiting to doff [as opposed to time spent waiting to don in that case] is not affected by the Portal-to-Portal Act and is instead covered by the FLSA." *Id*. at 40.  In this case, Nebraska Beef's employees were not paid for a number of tasks that they were required to perform and should have been compensated for under the continuous workday principle.  Defendants should not be allowed to now ask the jury to reduce the amount Defendants owe based on offsets for Dr. Fernandez's alleged allowances.

6

United States Department of Labor regulations and other case law also support precluding Defendants from arguing that they are entitled to an "offset." For example, the Department of Labor regulation at 29 C.F.R. 785.7 states that compensable time "ordinarily includes <u>all the time</u> during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed work place." (internal quotation marks omitted; emphasis added). Similarly, the Department of Labor regulation at 29 C.F.R. 790.6(b) states that the "workday," as bounded under the Portal Act by an employee's first and last principal activities, "includes <u>all time</u> within that period whether or not the employee engages in work throughout all of that period." (emphasis added). A number of courts have also held that such payments may not be used to reduce (or be offset against) damages for any uncompensated time under the FLSA. *See Ballaris, supra,* 370 F.3d at 903, 913-14 (rejecting employer's argument that it could apply a paid lunch period as an "offset" for unpaid hours worked); *Kasten v. Saint-Gobain Performance Plastics Corp.*, 556 F. Supp. 2d 941, 952-53 (W.D. Wis. 2008) (rejecting defendant's argument that any calculation of uncompensated work time for plaintiffs should be offset by any time for which plaintiffs were compensated but were not working); *Solis v. Tyson Foods, Inc.* (N.D. AL Nov. 12, 2009) Case No. 2:02-CV-1174-VEH (Document No. 498) at p. 9 (ordering a jury instruction regarding the continuous workday: "…at the beginning of the day, damages should be computed from the first principal activity until the start of paid time. At meal periods, damages should be computed for all periods that the employees worked but were not paid. At the end of the day, damages should be computed from the end of paid time until the last principal activity of the day…").

Thus, any notion of an "offset" for purposes of reducing the damages for <u>uncompensated</u> time occurring between the employees' first and last principal activities runs counter to the "continuous workday" principle and must be rejected.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motion *in Limine* to Preclude Defendants From Arguing That Nebraska Beef in Entitled to an Offset.

August 27, 2010                               Respectfully submitted,

s/  *Carolyn H. Cottrell*
Carolyn H. Cottrell (*pro hac vice*)
Todd M. Schneider (*pro hac vice*)
SCHNEIDER WALLACE
COTTRELL BRAYTON KONECKY LLP
180 Montgomery Street, Suite 2000
San Francisco, California 94104
Tel: (415) 421-7100
Fax: (415) 421-7105
tschneider@schneiderwallace.com
ccottrell@schneiderwallace.com

Shanon J. Carson (*pro hac vice*)
Russell D. Henkin (*pro hac vice*)
Ellen T. Noteware (*pro hac vice*)
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, Pennsylvania 19103
Tel: (215) 875-4656
Fax: (215) 875-4604
scarson@bm.net
rhenkin@bm.net
enoteware@bm.net

Philip A. Downey (*pro hac vice*)
P.O. Box 736
Unionville, Pennsylvania 19375
Tel: (610) 324-2848
Fax: (610) 347-1073
downeyjustice@gmail.com

Christopher P. Welsh (State Bar No. 22279)
WELSH & WELSH, P.C., L.L.O.
2027 Dodge Street, Suite 400
Omaha, Nebraska 68102
Tel: (402) 384-8160
Fax: (402) 384-8211
cwelsh@welsh-law.com

Attorneys for Plaintiffs

9

**CERTIFICATE OF SERVICE**

I hereby certify that on August 27, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

| | |
|---|---|
| Brian J. Brislen | bbrislen@ldmlaw.com, rebeccal@ldmlaw.com |
| Shanon J. Carson | scarson@bm.net |
| Carolyn H. Cottrell | ccottrell@schneiderwallace.com, efilings@schneiderwallace.com, mlewis@schneiderwallace.com |
| Philip A. Downey | downeyjustice@gmail.com |
| Michael Hamilton | mhamilton@provostumphrey.com, lheembrock@provostumphrey.com |
| Russell D. Henkin | rhenkin@bm.net |
| William M. Lamson, Jr | wlamson@ldmlaw.com, amyk@ldmlaw.com |
| Brian P. McCafferty | cafstar@aol.com |
| Ellen T. Noteware | enoteware@bm.net |
| Todd M. Schneider | tschneider@schneiderwallace.com, efilings@schneiderwallace.com |
| William R. Settles | wsettles@ldmlaw.com, jray@ldmlaw.com |
| Christopher P. Welsh | cwelsh@welsh-law.com |
| James R. Welsh | jwelsh@welsh-law.com |

                                                  s/ Carolyn H. Cottrell
Carolyn H. Cottrell *(pro hac vice)*
California Bar No. 166977
SCHNEIDER WALLACE
COTTRELL BRAYTON KONECKY LLP
180 Montgomery Street, Suite 2000
San Francisco, California 94104
Tel: (415) 421-7100
Fax: (415) 421-7105
ccottrell@schneiderwallace.com

1