THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| FERMIN CORTEZ, et al., | ) | CASE NO. 8:08-CV00090 |
| Plaintiffs, | ) | |
| vs. | ) | |
| NEBRASKA BEEF, INC. and, NEBRASKA BEEF, LTD., | ) | |
| Defendants. | ) | |
| DAVID CHUOL, et al., | ) | CASE NO. 8:08-CV00099 |
| Plaintiffs, | ) | |
| vs. | ) | |
| NEBRASKA BEEF, LTD., | ) | |
| Defendant. | ) | |

## DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE

PREPARED & SUBMITTED BY:

William M. Lamson, Jr., #12374
William R. Settles, #19879
LAMSON, DUGAN and MURRAY, LLP
10306 Regency Parkway Drive
Omaha, NE 68114-3743
Telephone: (402) 397-7300
Telefax: (402) 397-7824
wlamson@ldmlaw.com
wsettles@ldmlaw.com
bbrislen@ldmlaw.com
*ATTORNEYS FOR DEFENDANTS*

## INTRODUCTION

Plaintiffs seek to exclude certain of Dr. Fernandez' opinions on the basis that they are scientifically unreliable, despite having previously stipulated that neither party would file motions in limine challenging the admissibility of expert testimony pursuant to Fed. R. Evid. 702. In so doing, Plaintiffs present this Court with a distorted and misleading record, and urge this Court to fashion a new rule of admissibility for expert testimony. In particular, they argue for a bifurcated rule of admissibility, under which every assumption underlying an expert's opinions must be proven to be true by a preponderance of the evidence before the expert is permitted to testify about the opinion. (Plaintiffs' Memorandum of Law, at pp. 2, 3, 4, 26) This unwieldy, unprecedented and unheard of rule should be rejected.

## STATEMENT OF FACTS

Plaintiffs present a skewed and misleading statement of facts. Specific misrepresentations and omissions will be dealt with in the argument section of this brief. The following timeline of events informs the discussion:

| | |
|---|---|
| November 13, 2009 | Dr. Fernandez submits his initial report. This report sets forth Dr. Fernandez' methodology for measuring the reasonable amount of time to don, doff, walk, wash and sanitize. (Doc. #291, at Ex. 1) It also sets forth Dr. Fernandez' methodology for calculating allowances provided to employees, as well as his conclusions regarding the total time for donning, doffing, washing, walking and sanitizing activities, and the effect of allowances on these total times. *Id.* |
| December 10, 2009 | Plaintiffs' counsel depose Dr. Fernandez for nearly eight hours. |
| February 22, 2010 | The Parties stipulate that they will not file motions in limine challenging the admissibility of expert testimony at trial under Fed. R. Evid. 702. (Doc. #186) |
| February 23, 2010 | The Court imposed deadline for challenging the admissibility of expert testimony under Fed. R. Evid. 702 expires. (Doc. #184) |

1

| | |
|---|---|
| August 27, 2010 | The Court's extended deadline for filing motions in limine expires. (Doc #253) |
| January 12, 2011 | Defense counsel discloses to Plaintiffs' counsel the existence of newly discovered Sanitation Standard Operating Procedure ("SSOP") documents.[1] |
| January 17, 2011 | Dr. Fernandez submits an Addendum to his original report. Dr. Fernandez learned that the hide-off portion of the Slaughter department of Nebraska Beef is divided into two areas with different gang time start and stop times. Dr. Fernandez' original report did not note this distinction. The only new data in this Addendum is two new walking distances that were obtained to more accurately reflect the walks for employees in the bifurcated hide-off area. The methodology applied remains identical to Dr. Fernandez' original report. The recalculated values benefit the Plaintiffs.[2] |
| January 18, 2011 | A hearing is held on Plaintiffs' objections to the late production of the SSOP documents and Plaintiffs' motion to continue trial. Plaintiffs' objections to the late production of the SSOP documents are overruled, and Nebraska Beef's oral motion for continuance is granted. (Doc. #276) The parties are given until February 14, 2011, to amend their expert designations and provide reports, and until February 21, 2011, to provide counterdesignations. (Doc. #276) |
| February 14, 2011 | Dr. Fernandez provides his supplemental report, and all supporting data, to Plaintiffs. Plaintiffs choose not to supplement the opinions of their expert, Dr. Mericle, nor do they request the opportunity for further plant inspection in light of the SSOP documents. Dr. Fernandez' report uses the identical methodology as his original report. No new data regarding donning and doffing times is collected or analyzed. Several of the allowances are recalculated based upon new data collected in light of the SSOP documents. Dr. Fernandez also sets forth his analysis of the SSOP data. |

---

[1]  Although Plaintiffs suggest that the failure to discover and disclose these documents sooner was deliberate (Plaintiffs' Memorandum of Law, at pp. 33-34), they fail to articulate what possible advantage Nebraska Beef could gain by withholding evidence that is so clearly beneficial to the defense.

[2]  In Dr. Fernandez' original report, the total allowances exceeded the total time to don, doff, wash, walk, dip and sanitize in hide-off by 4.711 minutes. In his Addendum, new values were calculated (with only the walking distances changed) for the two subdivisions of hide-off: hide-off and final rail. These values were found to be 4.630 minutes and .621 minutes respectively.

2

| | |
|---|---|
| February 21, 2011 | The deadline for the parties to submit counterdesignations passes with no response from the Plaintiffs and no request for further plant inspection. |
| March 8, 2011 | Plaintiffs redepose Dr. Fernandez for approximately five hours. |
| March 24, 2011 | Plaintiffs make their first request for a new plant inspection by their expert. Nebraska Beef's counsel requests clarification regarding what additional work Dr. Mericle proposes to perform and why it could not have been performed before the February 14, 2011, deadline for supplemental expert reports. (Defendants' Index of Evidence, Ex. 6) This information is not provided. |
| March 29, 2011 | Plaintiffs file the pending motion. |

## ARGUMENT

Plaintiffs seek to exclude five categories of testimony from Dr. Fernandez: 1) Testimony regarding allowances "based upon his February 14, 2011, report" (Plaintiffs' Memorandum of Law, at p. 4); 2) testimony regarding the total time required for donning and doffing and related activities "based upon his February 14, 2011, report" *Id.*; 3) testimony based upon information provided to him "by counsel and company" *Id.*; 4) testimony based on the SSOP documents, *Id.*; and, 5) testimony based upon his February 2-3, 2011, plant inspection. *Id.* The first two of these categories are simply *Daubert* motions in disguise that Plaintiffs have filed despite their stipulation not to do so. These categories are discussed in Section I of this brief. The third category would require this Court to adopt a two-stage procedure for the admissibility of expert evidence, where an expert's opinion "cannot be offered into evidence until the underlying facts are proven by a preponderance of the evidence." (Plaintiffs' Memorandum of Law, at p. 4) This category is discussed in Section II of this brief. The final two categories of evidence, relating to the SSOP documents and Dr. Fernandez' February 2-3 plant inspection, are Plaintiffs' attempt to mitigate their failure to take advantage of the time allowed by the Court for further discovery and

3

supplementation of expert reports. These categories will be discussed in Section III of this brief. None of these categories of evidence should be excluded.

## I.

## PLAINTIFFS HAVE STIPULATED THAT THEY WOULD NOT FILE RULE 702 CHALLENGES AND DR. FERNANDEZ' METHODOLOGY HAS NOT CHANGED

Plaintiffs object to testimony from Dr. Fernandez based upon his calculation of allowances and of the total time required to don, doff, wash, walk and sanitize. (Plaintiffs' Memorandum of Law, at p. 4) They limit these objections, however, to testimony "based upon his February 14, 2011, report." *Id.* This limitation is Plaintiffs' attempt to evade their previous stipulation that they would not file Rule 702 motions in limine with respect to Dr. Fernandez (Doc. #186), and to create an exception to the Court's February 23, 2010, deadline for such motions and the Court's August 27, 2010, deadline for filing motions in limine. (Doc #253) They further try to evade these prohibitions by characterizing their motion not as a *Daubert* motion, but as "based primarily on separate and independent relevancy and prejudice concerns." (Plaintiffs' Memorandum of Law, at p. 4). Neither of these evasions withstand scrutiny. Plaintiffs' *Daubert* challenge likewise fails on the merits.

### A.  Dr. Fernandez' Methodology Has Not Changed Since His Initial Report.

Plaintiffs assert a litany of "failures" of Dr. Fernandez' methodology. (Plaintiffs' Memorandum of Law, at pp. 6-9) With respect to his calculation of allowances, Plaintiffs contend that Dr. Fernandez did not study whether the employees performed "off-the-clock" work,[3] did not measure or study the amount of time spent by hourly workers from their first touch of equipment until the line starts or from the time the line stops to the last touch of

---

[3] Although Plaintiffs assert that the issue to be resolved at trial is whether Plaintiffs and the Class performed off-the-clock work, this is decidedly not so. The issue is not whether they performed "off-the-clock" work, as Plaintiffs have defined it, but whether they are required to perform *uncompensated* work. Dr. Fernandez unquestionably studied this and his opinions are relevant to this issue. The distinction is discussed more fully in Section III(A) of this brief.

4

equipment, and relies upon assumed, "unverified" allowances. (Plaintiffs' Memorandum of Law, at pp. 6-9, 24-26) With respect to his measurement of donning and doffing time, Plaintiffs assert that Dr. Fernandez only measured "snippets" of time and omitted other activities that should have been included. (Plaintiffs' Memorandum of Law, at pp. 26-27)

Nebraska Beef will present evidence at trial to establish that all of these assertions are incorrect, and it will ultimately be up to the jury to decide which version of the evidence they believe. For purposes of this motion, however, even if one assumes that every one of these assertions is entirely correct, they add nothing to Plaintiffs' argument. Every one of these items was known or knowable at the time Dr. Fernandez provided his initial report in November of 2009. Nothing that Dr. Fernandez did after November 13, 2009 changed or added anything to these criticisms.

Dr. Fernandez' January 17, 2011, Addendum was based entirely upon the discovery that the hide-off area of the slaughter floor is divided into two sections: hide-off and final rail. The only new data in Dr. Fernandez' January 17, 2011, Addendum is two new walking distances, and recalculated allowances for hide-off and final rail based upon previously collected data. There was no new data collected regarding donning, doffing, washing and walking times, and those values remained unchanged.

Dr. Fernandez' February 14, 2011, report was prompted by the discovery of the SSOP documents. These documents record the time the first animal is stunned in the slaughter department and the time the last animal is stunned in the slaughter department. They also record the time the first carcass is indexed to production in the fabrication department and the time the last carcass is indexed to production in the fabrication department. From these numbers, the actual production time for the departments can be calculated. Production time can then be compared to the hours paid to the employees to determine how much additional paid time they

have in their day (before and after production activities) during which to perform donning, doffing, washing and walking activities.

After analyzing the SSOP data and comparing it to payroll data, it became clear that Dr. Fernandez' calculation of allowances was not capturing all of the additional paid time in the employees' day. Further investigation revealed that there were two potential sources of lost time. First, when calculating the pre-shift dwell[4] in fabrication, it was discovered that Dr. Fernandez, in his initial report, measured the fastest piece of meat through the department instead of measuring when the last employee in the department received product. New data was obtained to measure this time. Second, it was determined that the line speed in Slaughter increases after the early part of the day, and thus employees would leave sooner at the end of the day. New data was obtained to measure this time.[5] There were no other changes to Dr. Fernandez' allowances and no changes *at all* to Dr. Fernandez' calculation of donning and doffing times after his November 2009 report.

The important point is that the *methodology* Dr. Fernandez used to gather and analyze his data, and to which Plaintiffs now object, is identical to the methodology he used in his original report. The Plaintiffs had ample time to raise these objections through a properly framed *Daubert* motion, and chose not to do so. Instead, they stipulated that they would *not* be raising such a challenge. Plaintiffs' motion should be rejected as untimely and contrary to their prior stipulation.

---

[4]   Pre-shift dwell allowance is half the time taken from when the first piece of meat reaches the first employee on the line and when the same piece of meat reaches the last employee on the line. (Doc. #291, Ex. A, at p. 7)

[5]   The internal inconsistencies in Plaintiffs' argument are demonstrated by the fact that they criticize Dr. Fernandez for accepting the company's representation that the line speed in slaughter changes without measuring and verifying this fact (Plaintiffs' Memorandum of Law, at pp. 20, 29), while at the same time arguing that Dr. Fernandez' subsequent measurement and verification of the change in line speed should be excluded (Plaintiffs' Memorandum of Law, at p. 34).

6

### B. Plaintiffs' Motion Is A *Daubert* Motion In Disguise.

Plaintiffs attempt to evade their prior agreement by arguing that their stipulation "which only concerns Fed. R. Evid. 702 does not preclude this motion which is based primarily on separate and independent relevancy and prejudice concerns." (Plaintiffs' Memorandum of Law, at p. 4) This argument completely misapprehends the nature of a *Daubert* challenge, and should be rejected.

It is not merely fortuitous that the first case cited on the first page of Plaintiffs' Memorandum of Law is *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). Neither is it an accident that Plaintiffs' entire argument focuses on Dr. Fernandez' methodology in the context of Eighth Circuit precedent that discusses *Daubert* and Fed. R. Evid. 702. That a challenge is based on relevancy or prejudice considerations doesn't make it any less a *Daubert* challenge under Rule 702. A *Daubert* challenge under Rule 702 *is* a challenge to the relevancy of evidence. When evaluating the admissibility of evidence under Rule 702, "district courts must ensure that all scientific testimony is both reliable *and relevant*." *Marmo v. Tyson Fresh Meats*, 457 F.3d 748, 757 (8th Cir. 2006) (citing *Daubert* and Fed. R. Evid. 702) (emphasis added). Read in context, Plaintiffs entire argument is the very Rule 702 challenge that they stipulated they would not file.

Plaintiffs imply that the February 22, 2010, stipulation was limited to challenges based upon the experts' qualifications. (Plaintiffs' Memorandum of Law, at p. 3) This misstates the facts. The parties did not "generally agree[] that the parties' time study experts were qualified to make time measurements and testify about them at trial." *Id.* The parties agreed that they would not file motions in limine to challenge *any* ground for admissibility of the experts' opinions under Fed. R. Evid. 702. This includes challenges based upon the expert's methodology and the relevancy of the opinions to the issues in the case, i.e. the "fit" requirement of *Daubert*. More

7

importantly, this agreement was entered into *after* the Plaintiffs were armed with the full knowledge of Dr. Fernandez' methodology for calculating donning and doffing times and allowances. They cannot now claim surprise about these issues.

Even if one accepts the dubious premise that Plaintiffs' prior stipulation does not bar this motion, the Court's previously imposed deadlines do. Plaintiffs had until February 23, 2010, to file *Daubert* challenges and until August 27, 2010, to file all motions in limine. As noted above, Plaintiffs had full knowledge of Dr. Fernandez' methodology months before these deadlines, and nothing that Dr. Fernandez has done since that time in any way changes the arguments Plaintiffs are making today. They could have made the identical arguments well before the Court's deadlines expired.

In fact, Plaintiffs cite almost exclusively to Dr. Fernandez' December 10, 2009 deposition in support of their motion regarding Dr. Fernandez' calculation of allowances and total donning and doffing time. (Plaintiff's Memorandum of Law, "Statement of Facts," at ¶¶ 5, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 25, 26, 27, 28, 29, 30, 31, 32, 33) The only references to Dr. Fernandez' March 8, 2011, deposition in the context of his calculation of allowances and donning and doffing time are to statements regarding his general methodology (the answers to which were the same in 2009 as in 2011), or to statements that are merely duplicative of answers given by Dr. Fernandez in his December 10, 2009, deposition.[6] (Plaintiffs' Memorandum of Law, "Statement of Facts," at ¶¶ 1, 2, 3, 4, 8, 10, 30) Plaintiffs have failed to demonstrate *any* basis for this Court to disregard its previously established deadlines and permit the Plaintiffs to file this *Daubert* challenge out of time.

---

[6] Plaintiffs have also asserted a list of red herring activities that they contend Dr. Fernandez should have performed. These include reviewing the pleadings and depositions, interviewing NE Beef employees, reviewing NE Beef's training, etc. (Plaintiffs' Memorandum of Law, at p. 29) It is worth noting that Plaintiffs' expert, Dr. Mericle, did not perform any of these activities either, and there is no evidence that generally accepted industrial engineering standards require the performance of any of these activities. [cite]

8

### C. Plaintiffs' *Daubert* Challenge Fails On The Merits

Finally, should the Court choose to entertain Plaintiffs' motion on the merits, it will find that their challenges to Dr. Fernandez' methodology seriously miss the mark. Plaintiffs' argue, for example, that Dr. Fernandez measured only "snippets" of activity and excluded time spent in between activities that Plaintiffs' contend should be compensable. This argument raises two issues frequently litigated in donning and doffing cases: the use of the "elemental" analysis and the "reasonable time" versus "actual time" debate. Both of these issues have been universally resolved in favor of the methodology used by Dr. Fernandez.

Dr. Fernandez has described the elemental analysis as a standard method for conducting time studies that is accepted within the Industrial Engineering community. (Defendants' Index of Evidence, Ex. 5) In fact, Plaintiffs' proposed expert, Dr. Mericle, used an elemental approach that measured the donning and doffing of each clothing item and walking distance in the report he prepared in *Alvarez v. IBP, Inc.*, No. CT-98-5005-RHW, 2001 WL 34897841, at *11-12 (E.D. Wash. Sept. 14, 2001)("the methodology of [plaintiffs' expert] Dr. Mericle was followed by the DOL in its time studies involving IBP, and seems to be accepted in the meat packing industry. . . .") The use of the "elemental" or "task-based" methodology has been challenged in other cases. To the best of our knowledge, no court has ever accepted the argument that this methodology is invalid in the context of a donning and doffing case. *See, e.g., Anderson v. Sara Lee Corp.*, 508 F.3d 181, 186 (4th Cir. 2007)(referring to the district court's decision to decline to exclude the expert's report, although it measured individual activities, and admitting it for purposes of estimating the time needed by workers for the isolated acts); *Lewis v. Smithfield Packing Co.*, No. 7:07-CV-166-H, slip op. at 7-9)(E.D.N.C. Aug. 20, 2010)(holding that an expert report authored by Dr. Fernandez using the elemental approach was relevant to the amount of time at issue and factors for the *de minimis* defense), (Defendants' Index of Evidence, Ex. 3); *Sandifer v.*

9

*United States Steel Co.*, No. 2:07-CV-443 RM, 2009 WL 3430222, at *17-18 (N.D. Ind. Oct. 15, 2009)(court disagreed with plaintiffs' contention that measurement of donning and doffing activities must be in the aggregate rather than in elements); *Kasten v. Saint-Gobain Performance Plastics Corp.*, 556 F.Supp.2d 941, 946 (W.D. Wis. 2008)(rejected plaintiffs' argument that task-based methodology was legally improper and finding the report relevant); *Chao v. Tyson Foods, Inc.*, No. 2:02-CV-1174-VEH, slip op. at 7-8 (N.D. Ala. Sept. 7, 2007)(Dr. Fernandez' elemental methodology was relevant). (Defendants' Index of Evidence, Ex. 4)

The second issue raised by Plaintiffs' argument is the "reasonable" versus "actual" time debate. Plaintiffs contend that Dr. Fernandez should not be permitted to testify regarding the total time required for donning and doffing activities because he omits certain activities such as "all idle time after the first principal activity that starts the continuous work day." (Plaintiffs' Memorandum of Law, at pp. 26-27) This argument simply restates the universally rejected argument that, under the continuous workday rule, the measure of damages is the actual time spent by employees donning and doffing rather than the reasonable time required for such activities. Dr. Fernandez' has estimated the latter, and this is completely consistent with the continuous workday rule and legal precedent.

In the first FLSA case involving donning and doffing, the Supreme Court held that "compensable working time [is] limited to the *minimum time necessarily spent* in walking at an ordinary rate along the most direct route. . . ." *Anderson v. Mt. Clemens Pottery*, 328 U.S. 680, 692 (1946)(emphasis added). In the years since *Mt. Clemens Pottery*, virtually every court to confront this issue has applied the "reasonable" time as the appropriate measure of compensable time. *See Alvarez v. IBP*, 339 F.3d 894, 914 (9th Cir. 2003)(affirming that measure of damages is reasonable time spent not actual time required), *reversed on other grounds,* 546 U.S. 21, 126 S. Ct. 514, 519 (2005)(citing *Mt. Clemens Pottery* for the proposition that only "the time

necessarily spent . . . must be treated as part of the workweek"); *Amos v. United States,* 13 Cl. Ct. 442, 443, 448-50 (Cl. Ct. 1987)(compensable time at the start and end of the workday was limited to the amount of time reasonably required); *Anderson v. Wackenhut Corp.,* No. 507 CV 137 DCBJMR, 2008 WL 4999160, at *6 (S.D. Miss. Nov. 18, 2008)(rejecting claim that Supreme Court's decision in *IBP, Inc. v. Alvarez* held that all time occurring after the first principle activity is compensable); *Bull v. United States,* 68 Fed. Cl. 212, 227 (Fed. Cl. 2005)(overtime must be reasonable to be compensable).

Plaintiffs' motion to exclude Dr. Fernandez' opinions regarding donning and doffing time and allowances should be rejected. It is untimely and barred by their previous stipulation not to file motions in limine to challenge the admissibility of expert testimony under Rule 702. As a *Daubert* motion, it fails to credibly challenge the widely accepted and scientific methodology employed by Dr. Fernandez. Even treating Plaintiffs' motion as something other than a *Daubert* motion, it falls far short of establishing a basis to exclude these opinions.

## II.

### THERE IS AMPLE EVIDENCE THAT SUPPORTS THE ASSUMPTIONS DR. FERNANDEZ WAS ASKED TO MAKE

Plaintiffs next argue that "Rule 104(b) dictates that Fernandez' opinions that are based on assumed and unverified contested 'facts' provided to him by defense counsel, including the existence of certain so called 'allowances' for donning and doffing activities, cannot be admitted at trial until they are determined by a jury to be true." (Plaintiffs' Memorandum of Law, at p. 3) This absurd reading of Rule 104(b) has no basis in law.

It has long been the rule in this circuit that, "[a]s a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Olson v. Ford Motor Co.,* 481 F.3d 619, 627 (8th Cir. 2007). Plaintiffs' argument is nothing more than an

11

inventive, but misguided, effort to circumvent this rule. To the extent the factual bases for Dr. Fernandez' opinions are in dispute, Plaintiffs' will have ample opportunity to cross-examine him on those facts.

More importantly, Rule 104(b) does *not* require that the factual basis for an expert's opinion be "determined by a jury to be true" before the opinion becomes admissible. *Huddleston v. United States,* 485 U.S. 681, 690, 108 S. Ct. 1496, 99 L. Ed. 2d 771 (1988)(holding that the court's preliminary determination of admissibility neither assesses credibility nor finds that conditional fact has been proven by preponderance of the evidence, but merely finds whether jury *could* find the existence of conditional fact); *See also United States v. Mihm,* 13 F.3d 1200, 1205 (8th Cir. 1994). The procedure advocated by Plaintiffs would be impossibly unworkable. It would require the jury to deliberate on specific factual questions, return their findings, hear the expert testimony, and then retire again to deliberate on a verdict. It is safe to assume that no court in the United States has ever followed such a procedure, nor have Plaintiffs cited any authority to support their interpretation.

There will be ample evidence presented at trial to support the factual bases for Dr. Fernandez' testimony. Dr. Fernandez directly observed and measured most of the allowances in his report. The testimony of company executives, production supervisors and many of Plaintiffs themselves will establish the existence of those allowances provided to Dr. Fernandez by counsel and the company. Plaintiffs may dispute these facts, but it is for the jury to determine which facts are true and weigh the credibility of Dr. Fernandez' opinions accordingly.

III.

## DR. FERNANDEZ' OPINIONS REGARDING THE SSOP DOCUMENTS AND HIS FEBRUARY 2-3, 2011 PLANT INSPECTION WERE TIMELY DISCLOSED

Finally, Plaintiffs argue that Dr. Fernandez' opinions regarding the SSOP documents, and relating to his February 2-3, 2011, plant inspection, should be excluded as irrelevant, untimely and prejudicial. (Plaintiffs' Memorandum of Law, at pp. 31-34) This argument should be rejected for three reasons: 1) It misstates (or misunderstands) the significance of the SSOP documents; 2) it assumes that a party has the right to observe an opposing expert performing his work; and 3) it ignores the Court's extended deadlines for discovery and expert reports.

### A. Dr. Fernandez' Opinions Regarding The SSOP Documents Are Relevant And Admissible.

Plaintiffs' contend that Dr. Fernandez should not be allowed to opine that Nebraska Beef employees receive more compensated time each day than is required for them to perform all of their donning, doffing, washing, walking, sanitizing *and production* activities because this opinion "is totally irrelevant as to whether Plaintiffs and the Class actually worked off-the-clock." (Plaintiffs' Memorandum of Law, at p. 31) In making this argument, Plaintiffs have again misunderstood the issues in the case. The question of "off-the-clock" work has no meaning in this case. Nebraska Beef does not use a time clock. Although it has been explained ad nauseum, a brief review of Nebraska Beef's pay system will put Plaintiffs' objection in context.

Nebraska Beef pays its employees on a gang time system. Gang time is a method to record the total hours an employee is to be paid for a given day. Employees within a "gang" are not required to be at their workstation at the same time. Those that work closer to the beginning of the line will arrive earlier than those that work closer to the end of the line. Likewise, as production is completed, those that work closer to the beginning of the line will leave earlier than

13

those that work closer to the end of the line. The relevant inquiry is whether the employees are fully compensated for all of their work activities during the day.[7] In order to answer this question, two facts must be shown: how much time the employee spent doing production work and how much time was reasonably necessary for the employee to perform pre- and post-production "work" activities.[8]

The first of these facts, the length of time a given employee spent on production work, is proven by the SSOP documents. The length of time between the first stun/index and the last stun/index is the length of time that any employee had product in front of them to be processed.[9] For example, in Slaughter, if the first animal was stunned at 6:35 a.m. and the last animal was stunned at 2:54 p.m., the employee who is stunning the animals (the "knocker") had product in front of him to process for 7 hours and 59 minutes (from 6:35 a.m. until 2:54 p.m., less a 30 minute unpaid meal break). An employee twenty minutes down the line from the knocker would have product in front of him or her for the same length of time, although that employee's first and last product would arrive twenty minutes later than the first and last stun.

The second of these facts, the reasonable amount of time necessary to don, doff, wash, walk and sanitize, was directly measured by Dr. Fernandez. The comparison of these two facts is thus relevant to Dr. Fernandez' analysis and to the central issue in the case. Moreover, Dr. Fernandez did more than simply regurgitate a table provided by counsel as Plaintiffs contend (something, incidentally, that he would be permitted to do pursuant to Fed. R. Evid. 1006). Dr. Fernandez also analyzed the SSOP data and payroll data for normality of distribution, determined the mean and median values, determined that the median values were appropriate for

---

[7] This discussion assumes, for purposes of argument, that all of the donning, doffing, washing, walking and sanitizing activities that Plaintiffs contend are work are, in fact, work. Nebraska Beef disputes this issue.
[8] See the discussion of "reasonable time" versus "actual time" in Section I(b), above.

[9] Although Plaintiffs contend that chain speed is a "crucial fact," it is actually irrelevant to this analysis. While the speed that the chain is moving might affect the *number* of carcasses processed in a day, it has no effect on the *length of time* that a given employee is engaged in production activity.

14

comparison, and calculated descriptive statistics for the data. (Defendants' Index of Evidence, Ex. 1)

Dr. Fernandez' analysis of the SSOP data is further relevant because it corroborates his analysis of allowances. Dr. Fernandez' allowance methodology is simply a technique to calculate an estimate of extra paid time in excess of production time. It calculates indirectly what the SSOP and payroll data prove directly. That the final numbers are so similar verifies that Dr. Fernandez' analysis was correct.

### B.   Nebraska Beef Was Not Required To Notify The Plaintiffs Of Dr. Fernandez' Plant Inspection.

Plaintiffs' suggest that Dr. Fernandez should not be permitted to testify about any opinions based upon his February 2-3, 2011 plant inspection because it was "undisclosed" and was performed "without notice to the Plaintiffs" and without giving the Plaintiffs "the opportunity to participate in or observe the plant inspection." (Plaintiffs' Memorandum of Law, at pp. 5-6, 32-34) Again, this argument finds no support in the law.

Plaintiffs imply, without directly stating, that a party has some obligation to notify its opponent when an expert is performing work on its behalf. Plaintiffs do not make this argument directly because they cannot. Although there *may* be an obligation, under limited circumstances, for a party to notify its opponent when an expert will be conducting destructive testing on relevant evidence, *see, e.g., Schindler v. Walker*, 256 Neb. 767, 592 N.W.2d 912 (1999), that rule does not apply here. Moreover, Plaintiffs were not present for Dr. Fernandez' earlier plant inspections. They have not, and still do not, argue that opinions based upon those inspections should be excluded because of the failure to provide them with notice and the opportunity to attend. Such an argument would be completely baseless.

Plaintiffs' discussion of the ongoing obligation to supplement expert reports (Plaintiffs' Memorandum of Law, at pp. 32-33) is similarly unpersuasive. Their description of the duty is

15

correct, but entirely beside the point. Nebraska Beef *did* disclose Dr. Fernandez' updated opinions and supplement his expert report. Moreover, they disclosed Dr. Fernandez' updated opinions on the day his updated report was complete (which was eleven days after his plant inspection), and pursuant to the Court's deadline.

### C.  Dr. Fernandez' Opinions And Data Were Disclosed Pursuant To The Court's Extended Deadlines.

Finally, Plaintiffs argue that Dr. Fernandez should be precluded from offering opinions based upon "belatedly produced documents and his undisclosed and late plant inspection." (Plaintiffs' Memorandum of Law, at p. 32)  The Court has already dealt with the late production of the SSOP documents by continuing the trial and giving the parties extended deadlines for discovery and supplemental expert and rebuttal reports. The Court should reject any effort to relitigate that issue. The "undisclosed plant inspection" argument is dealt with in section III(B), above. What is left is Plaintiffs' characterization of Dr. Fernandez' plant inspection, which occurred and was disclosed to Plaintiffs (along with all of the video and other underlying data) before the Court's deadline for supplementing expert reports, as "late."

The essence of Plaintiffs' argument is not clear, but seems to be that Dr. Fernandez' plant inspection was "untimely" because it occurred after the original close of discovery. But this completely ignores the Court's extended discovery deadline regarding the SSOP documents and the Court's extended deadline to provide supplemental expert reports. Dr. Fernandez' February 2-3, 2011, plant inspection was a direct result of the discovery of the SSOP documents.[10] After analyzing the SSOP and payroll data, Dr. Fernandez felt that further investigation was warranted in order to determine where his analysis had failed to capture a small but measureable amount of

---

[10]  Although Plaintiffs contend that they were prejudiced by the late discovery of the SSOP documents, they fail to articulate the nature of this prejudice. Plaintiffs' expert received the SSOP documents the same time as Nebraska Beef's did, had the same length of time to analyze them and form opinions, and had the same opportunity to perform further investigation (including the opportunity to request access for an inspection) and prepare a supplemental report.

16

extra paid time. His plant inspection was limited in scope and sought only to reconcile this small discrepancy.

The fact is that, after the discovery of the SSOP documents, the Court provided the parties with extended deadlines for discovery and supplementation of expert reports. The Plaintiffs did not request the opportunity to collect additional data at the plant despite having ample opportunity to do so. Instead, they chose to have their expert do nothing. They persisted in this choice even after the production of Dr. Fernandez' report (in which his plant inspection was disclosed) and did not have their expert prepare a rebuttal report within the time period allowed by the Court. Their protestations of unfairness are unconvincing when viewed in light of the facts.

## CONCLUSION

For the foregoing reasons, Plaintiffs motion in limine should be denied.

NEBRASKA BEEF, INC., and NEBRASKA BEEF, LTD., Defendants,

By: /s/ William R. Settles
William M. Lamson, Jr., #12374
William R. Settles, #19879
Brian J. Brislen, #22226
LAMSON, DUGAN and MURRAY, LLP
10306 Regency Parkway Drive
Omaha, NE 68114-3743
Telephone: (402) 397-7300
Telefax: (402) 397-7824
wlamson@ldmlaw.com
wsettles@ldmlaw.com
bbrislenldmlaw.com
*ATTORNEYS FOR DEFENDANTS*

## CERTIFICATE OF SERVICE

I hereby certify that on the ___8th___ day of April 2011, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Russell D. Henkin - rhenkin@bm.net
Shanon J. Carson - scarson@bm.net
Ellen T. Noteware - enoteware@bm.net
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, PA 19103
-and-
Todd Schneider - tschneider@schneiderwallace.com
Carolyn H. Cottrell - ccottrell@schneiderwallace.com
W.H. "Hank" Willson - wwillson@schneiderwallace.com
SCHNEIDER WALLACE LAW FIRM
180 Montgomery Street, Suite 2000
San Francisco, CA 94104
-and-
Philip A. Downey - downeyjustice@gmail.com
P.O. Box 736
Unionville, PA 19375
-and-
Christopher P. Welsh - cwelsh@welsh-law.com
James R. Welsh - jwelsh@welsh-law.com
WELSH & WELSH, P.C., L.L.O.
9290 West Dodge Road, Suite 100 The Mark
Omaha, NE 68114
*ATTORNEYS FOR PLAINTIFFS*

                                                 /s/ William R. Settles

494333