IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| FERMIN CORTEZ, on behalf of themselves and all other similarly situated individuals, et al., | ) ) ) | 8:08CV90 |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | MEMORANDUM AND ORDER |
| NEBRASKA BEEF, INC., and NEBRASKA BEEF, LTD., | ) ) ) ) | |
| Defendants. | ) ) ) | |
| AVID CHUOL, on behalf of himself and all other similarly situated individuals, | ) ) ) | |
| | ) | 8:08CV99 |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| NEBRASKA BEEF, Ltd., | ) ) | |
| Defendant. | ) ) | |

This matter is before the court on plaintiffs' motion for sanctions, Filing No. 337, in case 8:08CV90 and Filing No. 446 in case number 8:08CV99. The court will refer to the document filing numbers in 8:08CV90, as it is the lead case. In their motion plaintiffs contend that the defendants intentionally and in bad faith violated the discovery rules. Plaintiffs ask this court to issue a default judgment and order the defendants to pay costs and attorney fees. Based on the evidence received by the court, the motion for sanctions for default judgment will be denied but will be granted as to the attorney fees and costs.

This case is brought by plaintiffs, who are employees of the defendants, alleging that defendants failed to pay them wages and overtime due under the Fair Labor

Standards Act, 29 U.S.C. § 201 *et seq*. Defendants own a meat processing facility in Omaha, Nebraska. The heart of the issue is whether the defendants pay their employees, or are required to pay their employees, for all required pre-production line and post-production line activities.

## LEGAL STANDARDS

Under Fed. R. Civ. P. 37, or the court's inherent power, a district court may impose sanctions on a party who wilfully or in bad faith abuses the discovery process. *See Monsanto Co. v. Ralph,* 382 F.3d 1374, 1376 (Fed. Cir. 2004), citing *Dillon v. Nissan Motor Co.,* 986 F.2d 263, 268 (8th Cir. 1993). "Sanctions are 'not merely to penalize those whose conduct may be deemed to warrant such a sanction, but [also] to deter those who might be tempted to such conduct in the absence of such a deterrent.'" *Chrysler Corp. v. Carey,* 186 F.3d 1016, 1022 (8th Cir. 1999) (citation omitted). Parties must disclose those documents that they expect to offer at trial. *See Fu v. Owens,* 622 F.3d 880, 883-84 (8th Cir. 2010). "The district court is not constrained to impose the least onerous sanction available, but may exercise its discretion to choose the most appropriate sanction under the circumstances." *Carey,* 186 F.3d at 1022. The Eighth Circuit has indicated that when applying Supreme Court precedent there is not a strict segregation of inherent authority and Rule 37 analysis, but "[t]he better practice is to apply Rule 37 where appropriate and not allow an exercise of inherent power to 'obscure' the Rule 37 analysis." *Sentis Group, Inc. v. Shell Oil Co.,* 559 F.3d 888, 899 (8th Cir. 2009) *citing Societe Internationale Pour Participations Industrialles Et. Commeriales, S.A. v. Rogers,* 357 U.S. 197 (1958). "[C]ourts first should turn to specific rules tailored for the situation at hand, such as Rule 37, to justify sanctions. Then, as an alternative basis for support or in circumstances

where specific rules are insufficient, i.e., when 'there [is] a need,' it may be appropriate to invoke their inherent authority." *Sentis*, 559 F.3d at 900 (*quoting Societe Internationale*, 357 U.S. at 207). "[T]he best practice is to keep the structured analysis for a particular rule separate from the relatively unstructured analysis associated with inherent authority." *Id*. Bad faith is required before attorney fees can be awarded under the court's inherent powers. *Willhite v. Collins*, 459 F.3d 866 (8th Cir. 2006) (*citing Roadway Express, Inc. v. Piper,* 447 U.S. 752, 766-67 (1980)) (award of attorneys' fees is permissible under a court's inherent powers as long as the person being sanctioned has demonstrated bad faith).

## DISCUSSION

On January 12, 2011, the defendants produced documents referred to as Sanitation Standard Operation Procedures Checklists (SSOP Checklists).[1] Defendants did not produce this checklist until three weeks before trial, far after the discovery deadlines had expired. As a result, this court had to postpone trial from January 31, 2011, until May 2, 2011, to allow plaintiffs time to review the documents and pursue additional limited discovery if needed.

During the rescheduled trial in May 2011, plaintiffs began to question defendants' employee, Lisa Cleary, regarding the SSOP Checklists. During testimony, Ms. Cleary indicated that she had never before seen the times listed on these documents. Transcript, Filing No. 328, page 117, lines 21-25; page 118, lines1-25; page 119, lines1-6; page 125, lines 15-25; page 126, lines 1-16; page 154, lines 6-10; page 155, lines 1-11; 18-25; page

---

[1] SSOP stands for Sanitation on Standard Operating Procedure, and refers a program requiring Nebraska Beef to ensure safety and food compliance with standards of the United States Department of Agriculture. These documents are referred to as the May documents, as they were produced in court on May 4, 2011, during trial. The January documents refer to a consultant Lou Gast (hired by defendants as a result of the USDA scrutiny) who added one or more categories to the SSOP checklist relating to stun times. Vice President Yasushi Yokozeki recorded this information.

3

156, lines 1-3; page 157, lines, 10-25; page 158, lines 1-25; page 159, lines 1-25; page 160, lines 1-25; and page 161, lines 1-8.  These documents were different from the ones previously disclosed to the plaintiffs.  Defendants then offered undisclosed documents known as the Cleary Sanitation Checklists.  Plaintiffs objected and suggested some of these documents were fabricated and further argued that defendants had not previously disclosed them.  After a colloquy with the attorneys concerning the same, the court indicated it intended to turn the matter over to the United States Attorney's Office for investigation.  The court made no findings as to whether any fraud occurred.  Defendants' counsel then moved for a mistrial and to withdraw as counsel.[2]  The court granted the motion, and a second trial was disrupted and halted.

Plaintiffs contend they discovered that defendants concealed these checklists; lied under oath regarding the existence of the checklists; fabricated material information contained within the checklists; produced another set of material documents known as the Cleary Sanitation Checklists, after the commencement of the May 2011 trial; and generally failed to timely produce both the January and May documents.  Defendants argue that they did not hide, fabricate or lie about any documents.  Further, defendants contend that it was plaintiffs' lack of diligence that caused documents not to be produced.  Finally, defendants contend that the documents they failed to disclose until May 2011, were created for the

---

[2]The court specifically stated:  "Mr. Lamson, before I let you do your response, I think I owe it to disclose to both of you that today I contacted the U.S. Attorney to ask the U.S. Attorney to do an investigation in this matter. If, in fact, these documents are falsified and they were digitalized and then sent to San Francisco and then entered into evidence in this court, that's wire fraud. And so I intend to advise each and every witness that testifies about these documents of their Fifth Amendment rights because there is an active investigation by the US Attorney concerning this right now, okay?"  Filing No. 348, Index of Evid., Ex. 1, Att. "B," 171:20-172:5, Page ID Nos. 5573-74.  The court will make no finding on the allegations that the documents may have been fabricated and fraudulent.

purpose of eliminating the overtime of the United States Department of Agriculture inspectors.

The court finds that these non-disclosed documents are both relevant and not privileged. As argued by the plaintiffs, these newly produced documents are inconsistent with the times listed on the documents already produced and given to the plaintiffs. They list class members' activities with regard to the sanitation activities and the timing of these activities. Defendants admit that these checklists were used to monitor compensation for the United States Department of Agriculture inspectors.[3] Such use makes them even more relevant.

The essence of this case is work done before and after the shift begins that is not compensated. These new documents might have been helpful to the plaintiffs in that regard, and that was a decision the plaintiffs were entitled to make. The court further finds that plaintiffs' discovery requests were broad enough to include these documents. *See*, e.g., Filing No. 339, Attach. 2, Ex. N, plaintiffs' first set of requests for production of documents, #14, which requested: "All documents concerning, identifying, or constituting your policies or practices applicable to any hourly employees with respect to (a) time-keeping; (b) compensation; (c) overtime; (d) when they must begin or end their work day; (e) when they must report to their production line or job posts; (f) sanitation; (g) donning or doffing PPE; (h) lunch breaks; (i) rest breaks; and (j) discipline related to being late or absent for any reason, including how it may affect their compensation; and request #16, which stated: "All documents that identify sanitation or safety procedures applicable to any hourly employee. . . ." *Id.* at Page ID # 4613. In addition, defendants' mandatory

---

[3]The May documents exist from 2004 thorough most of 2010.

disclosure under Fed. R. Civ. P. 26(a)(1) required disclosure of: "A copy of, or a description by category and location of, all documents, data compilations, and tangible things that are in the possession, custody, or control of defendants and that they may use to support its claims or defenses, unless solely for impeachment." *Id*. at Exhibit "M." *See also* letter dated July 9, 2009, from plaintiffs' counsel, during the meet-and-confer time, to Nebraska Beef's former counsel asking for SSOP official documents, Filing No. 339, Attach. 2, Ex. Q at Page ID #4636; and the letter dated September 18, 2009, Filing No. 339, Attach 2, Ex. S, Page ID # 4642 from plaintiffs' counsel to Nebraska Beef's former counsel regarding production of documents relating to United States Department of Agriculture standards regarding sanitation standards. On September 24, 2009, plaintiffs wrote to Nebraska Beef confirming the substance of a September 23, 2009, telephone conference, stating:

> You stated that you would check with Nebraska Beef regarding each of the requests we made for documents that Mr. Martinez's deposition revealed were not produced, as follows:
>
> g. Documents provided to Nebraska Beef by the USDA and OSHA regarding the PPE employees must wear, and the sanitation and washing procedures employees must undertake, and any other documents relating to Nebraska Beef's performance with respect to those standards. You stated that you will provide Nebraska Beef's position as to whether it will produce these documents by September 30.

See Filing No. 339, Attach. 2, Exhibit U, at Page ID # 4650 (September 24, 2009, correspondence from plaintiffs' counsel to Nebraska Beef's former counsel) (emphasis added). Nebraska Beef responded as follows:

> [Y]our recap is accurate though it assumes that all such documents exist. I cannot say that they do and indicated on our call that we would check with our client on whether they exist and if they are in NB's possession and, if they do, we will provide you with our position on production.

See Filing No. 339, Attach. 2, Exhibit V at Page ID # 4653 (September 24, 2009 correspondence from Nebraska Beef's former counsel to plaintiffs' counsel). Plaintiffs made the same requests with regard to the Cleary Sanitation Checklists on September 22, 2009, Request for Production Nos. 106 and 107.[4] Filing No. 339, Attach. 2, Ex. W. Nebraska Beef responded that No. 106 was duplicative of the previous request set forth above as number 16. *Id*. See also, Filing No. 339, Attach. 2, Ex. HH, Second request for production served on March 30, 2009, Request Nos. 55, 56, 57, 58, 63 and 64 asking for documents summarizing or describing start and stop times. Specifically, number 63 asked for "ALL DOCUMENTS describing or reflecting the time each day when the first head of cattle is knocked and placed on the production line at YOUR Omaha, Nebraska facility." *Id*. The response: "No such documents exist." *Id*. And Request No. 64 asked: "ALL DOCUMENTS describing or reflecting the time of day when the last head of cattle is knocked at YOUR Omaha, Nebraska facility." *Id*. Again, Nebraska Beef responded: "No such documents exist." *Id*. Further, the SSOP checklists were likewise requested and not disclosed. Nebraska Beef's argument that the Cleary documents were not requested strains credibility to the extreme. They were requested, they are relevant, and plaintiffs were entitled to receive them.

The court will award fees and costs for abuse of the discovery process. It is clear that defendants acted with disregard and bad faith in the discovery aspects of this case.

---

[4]Request No. 106 stated: "All documents that summarize, describe or refer to the sanitization hourly production and support employees are required to perform on their bodies, clothes, PPE or work station. This request includes, but is not limited to, training documents regarding sanitization." Request No. 107 asked: "All documents that summarize, describe or refer to the cleaning hourly production and support employees are required to perform on their bodies, clothes, PPE or work stations. This request includes, but is not limited to, training documents regarding cleaning." Filing No. 339, Attach. 2, Ex. W. The defendants objected to both questions.

The defendants have failed to follow court discovery orders regarding full disclosure to the plaintiffs. These failures have resulted in rescheduling of trial on two occasions, the second of which occurred after the jury was empaneled and trial testimony began. The court finds in fact that defendants have continuously abused the discovery process in this case, from the filing of the Rule 26 disclosures up and through the second trial.[5]

From January through the date of the May 12, 2011 trial, this court finds that the actions of the defendants were in bad faith. Defendants failed to disclose the documents in the Rule 26(a) disclosures; failed to disclose the documents in the requests for production; failed to supplement the disclosures; disclosed the checklists after trial was in progress; and failed to disclose a witness, Mr. Yasushi Yokozeiki, who had information regarding the time the production line starts. These documents were not in fact disclosed until three years after plaintiffs filed this lawsuit. Yet, the defendants produced them as evidence during trial in May 2011, for trial use. As a result, the court will order the defendants to pay the costs and the attorney fees associated with trial preparation for the trials in January and May 2011, including any additional costs related to the motions for sanctions filed due to the continuances of both trials.

Plaintiffs have provided this court with statement of costs and fees which amount to $1,675,558.98. *See* Filing No. 339, Attach. 1, Ex. A to Carolyn Cottrell affidavit. The court finds that amount is excessive and unreasonable both in amount and the hourly fees

---

[5] Although the court will not issue the requested default at this time, the court admonishes the defendants that if there is another significant issue in this case, it will most likely grant default in favor of the plaintiffs on the issue of liability.

requested.[6] The hourly rates in Nebraska range from approximately $150 to $250 depending on the specialization. Further, the court will not award fees for work done by multiple attorneys that is overlapping, nor will the court award fees absent an itemized filing of fee records.[7] The court will give the plaintiffs thirty days from the date of this order to make a formal request for fees that is in conjunction with the parameters set forth in this Memorandum and Order. The defendants shall thereafter have fourteen days to respond. The court will then enter an order awarding fees and costs. However, if plaintiffs choose to file their fee application after this case has been tried, as set forth in footnote 7, they must so notify the court.

THEREFORE, IT IS ORDERED:

1. Plaintiffs' motions for sanctions, Filing No. 337, in case 8:08CV90, and Filing No. 446 in case number 8:08CV99, are granted as to the motion for attorney fees and costs and denied as to the motion for default judgment, as set forth herein.

2. The objection to the evidence index, Filing No. 473 in case 8:08CV99, is denied.[8]

---

[6] The rates requested by the plaintiffs range from $650 to $675 for partners, $425 to $500 for associates and of counsel, $135 to $250 for paralegals and law clerks, and $75-$135 for word processors. Filing No. 339, Attach. 1, Ex. A. These are not the prevailing rates in Nebraska which is where this case is being tried.

[7] Plaintiffs' counsel requested that they be allowed to file their detailed records with the court in camera, if the court wishes to review them. However, the court is aware that defendants are entitled to argue that the amount of the fee requested is unreasonable, which by definition means defendants must be able to review the fee application. If plaintiffs do not wish to reveal sensitive information concerning their work product and strategy, the plaintiffs may file a written request for the court to delay filing their fee application until the trial is completed.

[8] The court reviewed the evidence and disregarded those documents and statements that were improper, self-serving, and called for legal conclusions.

3. Plaintiffs have thirty days from the date of this order to file a request for fees and costs as outlined herein. Defendants have fourteen days thereafter to respond to plaintiffs' motion. If plaintiffs choose to file their fee application after this case has been tried, they must so notify the court.

DATED this 3rd day of November, 2011.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.